723 A.2d 156

**David REBEL, Appellant,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Appellee.**

Supreme Court of Pennsylvania.

Argued March 11, 1998.

Decided Dec. 22, 1998.

John A. Lee, James A. Moore, Pittsburgh, for David Rebel.

Linda Lloyd, Pittsburgh, Clifford Blaze, Harrisburg, for Unemployment Compensation Board of Review.

Catherine S. Ryan, Robert B. Cottington, Pittsburgh, for Duquesne Light Company.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, and SAYLOR, JJ.

*OPINION OF THE COURT*

FLAHERTY, Chief Justice.

This is an appeal by allowance from an order of the Commonwealth Court which affirmed an order of the Unemployment Compensation Board of Review denying benefits for the appellant, David Rebel. At issue is whether appellant's refusal to submit to the employee drug testing policy of Duquesne Light Company constituted willful misconduct such that, upon appellant's dismissal for failure to undergo testing, unemployment benefits can properly be denied.

Pursuant to Duquesne Light's policy of maintaining a drug-free workplace, all employees of the company are subject to a random drug testing program. Appellant, an electrical engineer who had been employed by Duquesne Light for more than twenty years, was aware of the program. All employees had been informed that disciplinary action would be taken against any that refused to comply. On May 10, 1995, appellant was directed to report immediately for a urinalysis drug test. He was given an employee handout explaining that, if there were any questions or problems, he should feel free to consult his supervisor. Appellant, however, did not report for the test and did not inform his supervisor of any problem that would prevent him from being tested. The following day, when his supervisor asked about the test, appellant replied that he had no intention of being tested and that he did not

believe in the program. The supervisor informed him of the seriousness of this infraction and notified authorities in the corporate security and personnel departments. Appellant was instructed to leave the site and was placed on non-pay status pending further review. Soon thereafter he was notified that, due to his refusal to comply with the drug testing policy,[1] he was discharged effective May 11, 1995.

Appellant filed an application for unemployment compensation, but benefits were denied. An appeal was taken, whereupon a referee determined that appellant had no valid cause for refusing to take the drug test. Appellant's refusal was deemed willful misconduct which, under Section 402(e) of the Unemployment Compensation Law, 43 P.S. § 802(e), provided Duquesne Light with a basis for discharging him from employment without incurring liability for benefits.[2] The Unemployment Compensation Board of Review affirmed. The Commonwealth Court likewise affirmed.

The term "willful misconduct" is not statutorily defined, but this court has defined it to include a "deliberate violation of the employer's rules" and a "disregard of standards of behavior which the employer has a right to expect of an employee." *Rossi v. Unemployment Compensation Board of Review,* 544 Pa. 261, 267, 676 A.2d 194, 197 (1996). In determining whether an employee's actions constitute willful misconduct, it is necessary to consider all of the circumstances, including the reasons for the employee's noncompliance with the employer's directives. *Id.* at 266, 676 A.2d at 197. If the "conduct was justifiable or reasonable under the circumstances, it was not willful misconduct because it was not in disregard of standards that the employer had a right to expect." *Id.* at 267, 676 A.2d at 197–98. Hence, "if there was good cause for the conduct, it was not willful misconduct." *Id.*

1. Appellant's poor job performance was cited as an additional reason for his discharge.

2. Section 402 provides: "An employe shall be ineligible for compensation for any week ... (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work...." 43 P.S. § 802.

Appellant contends that Duquesne Light's drug testing program invades his privacy rights. He complains that the program was not adopted with the employees' consent,[3] and he characterizes the program as being draconian in its intrusiveness. In particular, he objects that it is not limited to those in safety-sensitive positions or those with a history of substance abuse, that it can cause employees to reveal personal medical information about their health and prescriptions, that it subjects employees to indignities when urine samples are collected, and that it is not justified on the basis of existing levels of employee drug use or drug-related workplace accidents. He argues, therefore, that he had good cause for refusing to comply with the program. We do not agree.

Appellant asserts that, in determining whether there was cause to disobey an employer's directive, a balancing test must be utilized to weigh the burden on the employee against the employer's interest in making the demand. Cited as the source of this balancing test is *Simpson v. Unemployment Compensation Board of Review*, 69 Pa.Cmwlth. 120, 450 A.2d 305 (1982), cert. denied, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 97 (1983). In *Simpson*, an employee was discharged for refusing to comply with a policy requiring that lunch buckets be opened for inspection when employees leave the workplace. The policy was designed to deter the pilferage of tools. The court held that the employer's policy was a reasonable one, and that failure to comply constituted willful misconduct that precluded an award of unemployment benefits. It reasoned that the employee's interest in privacy was outweighed by the employer's interest in deterring theft. The court noted that search and seizure provisions of the Fourth Amendment of the United States Constitution and Article I, § 8 of the Pennsylvania Constitution were not applicable since the search was conducted by a private employer and there was no governmental action. *Id.* at 128, 450 A.2d at 309. Accord *Chandler v. Miller*, 520 U.S. 305, 322–323, 117 S.Ct. 1295, 1305, 137

---

**3.** Union approval of the random drug testing program was obtained, but the consent of non-union employees, such as appellant, was not sought.

L.Ed.2d 513, 529 (1997) (Fourth Amendment constraints not applicable to private sector drug testing).

Notwithstanding the fact that the court in *Simpson* was not persuaded by the employee's claim of privacy, appellant relies on the analytical framework of *Simpson* to support his contention that Duquesne Light's interest in a drug-free workplace is outweighed by common law privacy rights. With regard to the balancing of employer and employee rights, and the duty to comply with employer directives, *Simpson* instructs:

An employee owes his employer, among other duties, a reasonable level of cooperation regarding matters that are important to the employer's interest. . . .

Of course, an employee's implied obligation to cooperate with his employer does not abrogate all of the non-constitutional personal and proprietary rights upon which an employee could rely to justifiably withhold the action requested. Certainly, for example, an employee does not have an implied obligation to open his home to an employer search, or to stand on his head because the employer so requests. The extent to which the implied obligation to cooperate will be deemed to prevail over an allegedly reserved common law right must, in effect, rest on a conclusion about the circumstantial reasonableness of the employer's request and its burdensomeness to the employee. . . .

But if an employer's request can be deemed circumstantially reasonable, after considering the burden to the employee, then the employee has an implied obligation to cooperate. Although there might be practical reasons that can justify an employee's refusal to cooperate, such noncompliance cannot be predicated upon asserted common law personal and property rights. As to employer requests that are reasonable in the above sense, the employee has waived those rights as a basis for noncompliance; he waived them when he voluntarily assumed the legal relationship with his employer.

*Id.* at 131–32, 450 A.2d at 311. *Simpson* accurately sets forth the relevant interests to be balanced and was properly relied

upon by the court below in concluding that appellant's noncompliance constituted willful misconduct.

Upon weighing the employer's interest in the drug testing program against the burden to employees, we conclude that the program is a reasonable one. Appellant had an implied obligation, therefore, to comply.

The employer has a strong interest in maintaining a workplace that is free from the influence of drugs. This is true of the entire work site, not just areas that are regarded as highly safety-sensitive. Employees who have consumed drugs can incur reductions in their productivity, reliability, and competency, thereby adversely affecting the employer's interests. In turn, interests of customers can be detrimentally affected as well. There are also overriding concerns of safety and liability. Workplace safety is obviously undermined by employees who are impaired in their physical and mental capacities. Not only are fellow workers endangered, but the public is likewise placed at risk. The avoidance of injury, as well as concern for vicarious liability that can accrue to the employer, are legitimate interests of the employer that must be accorded substantial weight.

Appellant's objection that Duquesne Light adopted the testing program without having obtained the employees' consent is groundless. The creation of rules and requirements that govern the workplace is the prerogative of the employer. As stated in *Metropolitan Edison Co. v. Unemployment Compensation Board of Review,* 146 Pa.Cmwlth. 648, 657, 606 A.2d 955, 960 (1992),

> An employer has the right to make decisions as to how he or she is going to run his or her business. In *Hayes [v. Unemployment Compensation Board of Review,* 36 Pa. Cmwlth. 49, 54, 387 A.2d 186, 188 (1978) ], this Court stated: "[T]he right of an employer to run his business according to his own beliefs and judgment may not be restricted unless compelling reasons to the contrary exist."

See also *Novak v. Commonwealth,* 514 Pa. 190, 193–94, 523 A.2d 318, 320 (1987) (discussion of management prerogatives

in public sector employment, applicable as well in the private sector).

Further, appellant's characterization of the program as being draconian in its intrusiveness is simply not supported by the record. The drug testing is conducted in off-site medical facilities where employees are tested in a confidential and professional manner, and urine samples are obtained in conformity with standardized testing procedures. Contrary to appellant's assertions, the record does not indicate that indignities are inflicted on employees during this process. See generally *Vernonia School District 47J v. Acton*, 515 U.S. 646, 658, 115 S.Ct. 2386, 2393, 132 L.Ed.2d 564, 577–78 (1995) (Acceptable test conditions make the privacy interests compromised in the process of obtaining urine samples for drug testing negligible.).

Nor is there basis for appellant's contention that the program results in broad disclosures of personal medical conditions. The drug test makes no generalized inquiry into such conditions. Those being tested are asked to reveal prescription and non-prescription drugs that they have consumed in the preceding thirty days, and this information is used only to confirm reasons for positive test results. The information is not disclosed to others.

Further, the only drugs for which random testing is conducted are marijuana, cocaine, opiates, phencyclidine, and amphetamines, i.e., ones which the employer has a legitimate interest in excluding from the workplace. Appellant's suggestion that testing for these drugs should be confined to employees with a known history of substance abuse is without merit. There is no basis for belief that the only drug users in the workplace are those whose prior use is already known to the employer.

We conclude that the testing program of Duquesne Light was narrowly tailored to meet the employer's needs and that it did not unduly intrude on appellant's privacy interests. Hence, it was reasonable. Appellant's failure to cooperate with the program was without good cause. Willful misconduct

was properly found, and the denial of unemployment benefits was, therefore, proper.

Order affirmed.

Justice ZAPPALA, files a concurring opinion.

Justice NIGRO, files a concurring and dissenting opinion.

ZAPPALA, Justice, concurring.

Although I agree with the Court's decision, I write separately to stress its narrow scope. The limited issue presented by this appeal is whether the Appellant's refusal to submit to his private employer's drug testing requirement constituted "willful misconduct" pursuant to § 802 of the Unemployment Compensation Law. 43 P.S. § 802(e). As the Court's opinion properly articulates, that determination requires a consideration of "all the circumstances" surrounding the employee's (Appellant's) conduct. *Rossi v. Unemployment Compensation Board of Review,* 544 Pa. 261, 266, 676 A.2d 194, 197 (1996).

This Court has stated that if there was "good cause" for the employee's conduct (i.e., the employee's refusal to submit to drug testing), then such conduct will not be deemed "willful misconduct" under the Law, and, consequently, will not be deemed a basis for refusing unemployment compensation. *Rossi,* at 267, 676 A.2d 194, 676 A.2d at 197–98. In the case at bar, Appellant has asserted that the invasion of his privacy rights by the drug test satisfies the "good cause" standard, and, therefore, his conduct was not "willful misconduct" under the Law. While I agree with the Court's analysis of the Law and its application of cases interpreting it, I think it is critical to stress that this decision has absolutely no ramifications with respect to actions in tort based upon invasion of privacy, or the protection against unreasonable government intrusions provided by the state and federal constitutions. *See* Intervenor Duquesne Light Company's Brief at 6–7 (stating that "this is not a case for tortious invasion of privacy but for unemployment benefits"); Majority Opinion at 158–59, *citing, Chandler v. Miller,* 520 U.S. 305, 117 S.Ct. 1295, 1305, 137 L.Ed.2d 513

(1997) (stating that Fourth Amendment analysis is not applicable to private sector drug testing).

In sum, this decision does not pass judgment on the employer's conduct, but, instead, simply disallows the employee, Appellant, from receiving unemployment benefits.

NIGRO, Justice, concurring and dissenting.

I dissent from the majority's conclusion that Appellant may not collect unemployment benefits because he refused to submit to his employer's random drug testing policy. While I generally agree with the majority that such a refusal may constitute willful misconduct, I find that the specific facts of this case dictate a contrary result.

As stated by the majority, under the Pennsylvania Unemployment Compensation Act, an employee is ineligible for unemployment compensation benefits when his unemployment is due to discharge or temporary suspension from work for willful misconduct connected with his work. 43 P.S. § 802(e)(1991). Willful misconduct includes a deliberate violation of an employer's rules and a disregard of standards of behavior that an employer has a right to expect. *Rossi v. Pennsylvania Unemployment Compensation Bd. of Review*, 544 Pa. 261, 676 A.2d 194, 197 (Pa.1996). If there was good cause for an employee's conduct, however, it was not willful misconduct. *Id.* at 198. To determine whether an employee engaged in willful misconduct, a court must consider all of the circumstances surrounding an employee's failure to follow an employer's instruction, including the employer's reasonableness and the employee's justification for noncompliance. *See id.*

The rule at issue in this case is the employer's random drug testing policy. I agree with the majority that Appellant's employer has a legitimate interest in maintaining a workplace that is free from drugs. I cannot conclude, however, that a random drug testing policy is reasonable when applied to an employee like Appellant, who had worked for Duquesne Light

Company for twenty years before the drug testing policy was implemented.[1]

Since an employer has a right to set the rules of the workplace, Duquesne Light Company could discharge Appellant for his failure to comply with its new policy. However, since drug testing was not a condition of employment when Appellant was hired, I do not believe his refusal to submit to the test constituted willful misconduct. An employee engages in willful misconduct when he refuses to abide by reasonable changes to his initial terms of employment. *See Hershey v. Unemployment Compensation Bd. of Review*, 146 Pa. Commw. 255, 605 A.2d 447 (1992); *Ford v. Unemployment Compensation Bd. of Review*, 67 Pa. Commw. 451, 447 A.2d 710 (1982). While reasonable for employees who are aware of such a requirement when hired, since drug testing implicates a person's sense of privacy, I find a new drug testing policy an unreasonable change to a long-standing employee's conditions of employment for the purpose of unemployment compensation.[2] Thus, I believe Appellant should not be denied unemployment compensation benefits based upon willful misconduct for his refusal to abide by the new drug testing policy.

1. Appellant began working for Duquesne Light Company on November 18, 1974. A random drug testing policy was implemented in 1994.

2. This case is distinguishable from *Rossi v. Unemployment Compensation Bd. of Review*, 544 Pa. 261, 676 A.2d 194 (Pa.1996), where the Court stated that length of employment is not a factor in determining willful misconduct. *Rossi* involved a long-term employee who falsified his expense reports. It did not involve a change to the conditions of employment after a substantial period of time.