**Richard STATLER, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 12, 1999.

Decided April 27, 1999.

---

Michael Goldberg, Lancaster, for petitioner.

Bruce D. Bagley, Harrisburg, for intervenor, Caterpillar, Inc.

Before COLINS, President Judge, McGINLEY, J., and LORD, Senior Judge.

LORD, Senior Judge.

Richard Statler (Claimant) petitions this Court for review of an Unemployment Compensation Board of Review (Board) order that affirmed a referee's decision to deny Claimant benefits under Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e).

The Board made the following pertinent findings of fact.

Claimant was last employed as a material handler specialist by Caterpillar, Inc. for approximately 2½ years at a final rate of $9.75 an hour and his last day of work was June 5, 1998.

On March 16, 1998, employer entered into a tentative agreement with the union. This agreement included Section 7.15 which deals with electronic fund transfer.

As part of a negotiated agreement between employer and its bargaining unit, of which claimant is a member, Section 7.15 provided for the electronic transfer (direct deposit) of employees' wages to their personal bank accounts.

Employees were given until noon on June 5, 1998, to execute the documents required to implement Section 7.15.

This required employees to fill out documentation, to sign the agreement and attach a voided check for bank verification.

However, on June 3, 1998, claimant expressed to the bargaining unit and management his objections to language on papers which he was required to execute such as: "If ever Caterpillar Inc. transmits an incorrect amount to my financial institution, I authorize Caterpillar Inc. to make the appropriate adjustment. Before any negative adjustment is made, I understand that I will be informed of the detail."

Claimant refused to execute the forms on the basis that the language gave the employer access to his personal banking account, whereby funds could be withdrawn.

Employer assured the claimant that at no time would Caterpillar do anything underhandedly or unlawful. Employer is a multi-national corporation and held to high ethical standards.

The claimant was informed that his failure to sign the authorization would result in discharge.

Claimant did not suggest that employer would act illegally, just that they would have a power, which claimant felt was a violation of his privacy and civil rights.

Employer suggested claimant either take the matter up with the bargaining unit or file a grievance, but claimant did not pursue matters beyond the discussion stage. Claimant had an alternative, which was exercised by other employees at other Caterpillar locations, of crossing out the offending language, initialing the cross out and executing the documents.

The claimant did not do so because he asserted he was leery of the legal ramifications.

. . .

On June 5, 1998, at 1:30 p.m., the claimant was afforded his last chance to sign the document.

Claimant refused to do so and with that, he was discharged due to [sic] violation of a condition of his employment.

The Board thereafter reasoned that, in accordance with Section 402(e) of the Law, Claimant's actions constituted willful misconduct, thus rendering him ineligible for benefits.[1] Hence, the Board affirmed the referee's decision denying Claimant benefits. Claimant now appeals to this Court.[2]

The issue presented in this case is whether Claimant's refusal to sign the authorization form allowing Caterpillar, Inc., (Employer) to deposit and remove funds from his bank account amounted to willful misconduct.

Section 7.15 of the labor agreement, which Claimant does not deny that he was bound by at the time of his dismissal, provides, in relevant part, as follows.

As a condition of employment except as otherwise provided below, all current employees will make necessary arrangements to allow for electronic funds transfer. All current employees will have 60 days following the effective date of this Agreement to select a financial institution which accepts such funds transfer and will provide necessary information to the Company to facilitate such transfer.

Therefore, beginning 90 days following the effective date of this Agreement, all employees will have their pay distributed by electronic funds transfer.

(Article 7.15, Central Agreement between Caterpillar Inc. and the UAW, 2/12/98, p. 42).

The authorization form that Claimant refused to sign and which directly resulted in his discharge included the language:

If ever Caterpillar, Inc., transmits an incorrect amount to my financial institution,

I authorize Caterpillar, Inc., to make the appropriate corrective adjustment.

(UAW Electronic Funds Transfer (EFT) Direct Bank Deposit Authorization).

■ Claimant, in his brief, argues that the labor agreement did not authorize the removal of funds from employees' bank accounts by Employer, and thus he was justified in refusing to sign the authorization form which allowed Employer to do so. Indeed, the labor agreement does not contain language which specifically allows for the removal of funds from employees' bank accounts by Employer. The labor agreement merely provides that "all current employees will make necessary arrangements to allow for electronic funds transfer." Nowhere in the labor agreement is the phrase "electronic funds transfer" defined. However, as we read the pertinent provision of the labor agreement, we find no contractual obligation under it to sign the authorization form allowing the employer to *withdraw* funds.

Nonetheless, we must now decide whether Claimant had a duty to complete Employer's authorization form flowing from his general employee relationship with Employer. In *Simpson v. Unemployment Compensation Board of Review,* 69 Pa.Cmwlth. 120, 450 A.2d 305, 311 (1982), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 97 (1983), we described an employee's duty to comply with employer directives as follows:

An employee owes his employer, among other duties, a reasonable level of cooperation regarding matters that are important to the employer's interest. . . .

Of course, an employee's implied obligation to cooperate with his employer does not abrogate all of the non-constitutional personal and proprietary rights upon which an employee could rely to justifiably withhold the action requested. Certainly, for example, an employee does not have an implied obligation to open his home to an

1. Section 402 of the Law provides: "An employe shall be ineligible for compensation for any week... (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work...."

2. Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial, competent evidence. *Remcon Plastics, Inc. v. Unemployment Compensation Board of Review,* 651 A.2d 671 (Pa.Cmwlth.1994).

employer search, or to stand on his head because the employer so requests. The extent to which the implied obligation to cooperate will be deemed to prevail over an allegedly reserved common law right must, in effect, rest on a conclusion· about the circumstantial reasonableness of the employer's request and its burdensomeness to the employee. . . .

But if an employer's request can be deemed circumstantially reasonable, after considering the burden to the employee, then the employee has an implied obligation to cooperate. Although there might be practical reasons that can justify an employee's refusal to cooperate, such noncompliance cannot be predicated upon asserted common law and personal property rights. As to employer requests that are reasonable in the above sense, the employee has waived those rights as a basis for noncompliance; he waived them when he voluntarily assumed the legal relationship with his employer.

In *Rebel v. Unemployment Compensation Board of Review*, 555 Pa. 114, 723 A.2d 156 (1998), our Supreme Court recently cited this method of balancing the relevant interests of employers and employees in deciding the question of whether an employee's refusal to honor an employer's request constitutes willful misconduct.

In its brief, Employer asserts no "true hardship" would be visited upon Claimant by giving Employer the right to withdraw funds from his bank account at will. Furthermore, Employer describes Claimant's fears associated with Employer's access to his bank account as "paranoiac." We do not embrace these characterizations, since it is not entirely unreasonable to assume that, under the electronic funds transfer scheme set forth, Employer has the potential to withdraw funds over and above the incorrectly deposited amount, or, for that matter, the entire contents of Claimant's bank account. Under the terms of the authorization form, Employer is the party that decides when an overpay- . ment has been made and how much the overpayment is. Employer's possession of "high ethical standards" and a "commitment to act lawfully" do not eliminate the possibility of mistake or abuse. Certainly, an employee is not obligated to provide unfettered access to bank accounts when, as Claimant here suggested, alternatives to correct errors, such as adjusting the subsequent wage deposit, exist.

██ That said, we will nevertheless affirm the Board's decision, because it is based on its findings that Claimant refused Employer's offers of more than one accommodation of Claimant's concerns. An amended authorization form was given to Claimant that allowed Employer to make a negative adjustment only after informing employees in detail. Claimant was also instructed that he could strike the language of the amended form that was still offending, and then affix his initials to the striking mark, as other employees had done. Notwithstanding Claimant's misgivings about the legal efficacy of doing so, we agree with the Board that Claimant refused Employer's attempts to offer reasonable accommodations of his concerns. Such a refusal is disqualifying under Section 402(e) of the Law as we are bound to interpret it in accordance with the standard now adopted by our Supreme Court in *Rebel*.

Accordingly, we will enter an order affirming the Board's decision.

### ORDER

AND NOW, this 27th day of April, 1999, the order of the Unemployment Compensation Board of Review, No. B–98–03–E–0528, dated September 16, 1998, is hereby affirmed.