Elaine ELLIS, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 18, 2000.
Decided April 11, 2000.

John Stember, Pittsburgh, for petitioner.

No appearance entered for respondent.

Before DOYLE, President Judge, and FRIEDMAN, J., and MIRARCHI, Jr., Senior Judge.

FRIEDMAN, Judge.

Elaine Ellis (Claimant) appeals from the order of the Unemployment Compensation Board of Review (UCBR) that affirmed the referee's decision denying her unemployment compensation benefits. The referee and UCBR determined that Claimant's failing of a drug test constituted willful misconduct, rendering Claimant ineligible for benefits under section 402(e) of the Unemployment Compensation Law (Law).[1] Although we agree that an employee's failing a drug test may constitute willful misconduct, we reverse because Claimant's employer did not prove that Claimant failed the drug test.

The UCBR found the following facts. For eleven years, Claimant worked as a bus driver for the Port Authority Transit (Employer), (UCBR's Findings of Fact, No. 1), where she was subject to Employer's random drug testing policy. On July 24, 1998, Employer discharged Claimant after she tested positive for marijuana. (UCBR's Findings of Fact, No. 2; Original Record, Exhibit 7B, Testimony of Dr. Constantino, N.T. at 8, 9.) On August 6, 1998, Claimant signed a Last Chance Agreement, in which she promised to remain free of drugs and alcohol while on duty and agreed that, if she subsequently tested positive for any drug or alcohol, she would be subject to disciplinary action up to and including discharge. (UCBR's Findings of Fact, Nos. 5, 6; O.R., Exhibits 7B and 7C; N.T. 2, 5.) In accordance with the Last Chance Agreement, Claimant was reinstated to her position as a bus driver. (UCBR's Findings of Fact, No. 5.) However, on October 7, 1998, Claimant again tested positive for marijuana use; as a result, Employer discharged her.[2] (UCBR's Findings of Fact, Nos. 7, 8, 9.)

1. Section 402(e) of the Law states, "An employe shall be ineligible for compensation for any week ... [i]n which his [or her] unemployment is due to ... discharge ... from work for willful misconduct connected with his [or her] work...." Act of Dec. 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

2. Actually, when Claimant was tested for drugs on October 7, 1998, it was determined that the test was adulterated. (N.T. at 6–7; O.R., Exhibit 7A.) Employer considers an adulterated test to be a positive test. (N.T. at 7.) At the request of Claimant's union representative, Employer permitted Claimant to take another drug test on December 9, 1998, the result of which was positive. (N.T. at 7.)

Claimant subsequently applied for unemployment compensation benefits, claiming that she disagreed that her drug test was positive "[b]ecause labs can make mistakes." (O.R., Form UC–990 ¶¶ 10, 12.) The Office of Employment Security denied Claimant's claim on the ground that her positive drug test constituted willful misconduct under section 402(e) of the Law. Claimant appealed, and a hearing was held before the referee. At the hearing, Employer presented the testimony of two employee relations specialists, who testified generally that Claimant was discharged due to her positive drug tests. However, neither witness testified as to how Employer collected any of Claimant's three urine samples or how Employer transmitted any of those samples to the laboratory that subsequently tested them.

Employer also presented the telephone testimony of Anthony G. Constantino, Ph. D., who is the Vice–President and Director of Toxicology and Industrial Hygiene at American Medical Laboratories of Chantilly, Virginia (Laboratory). (N.T. at 1, 8, 10.) Dr. Constantino testified that the Laboratory receives "about 3,000 samples a day" for workplace drug testing. (N.T. at 10.) He described the Laboratory's procedures[3] and stated that those procedures were followed with respect to Claimant's urine sample. (N.T. at 8.) Dr. Constantino testified that the Laboratory conducted tests on all three of Claimant's urine samples. (N.T. at 8.) The Labora-

tory received Claimant's first sample in July of 1998 and, after screening it "by enzyme immunoassay," determined that it was positive for marijuana. (N.T. at 8, 9.) The Laboratory also received Claimant's second sample taken in October of 1998, which it determined to be adulterated[4] and, therefore, unsuitable for testing. (N.T. at 9.) Dr. Constantino testified that, in December of 1998, the Laboratory received the third sample, which the Laboratory "reported positive for marijuana metabolites." (N.T. at 9.) However, Dr. Constantino admitted that he "did not actually handle the sample and do the analytical work...," but instead "reviewed the documentation for the purposes of this litigation." (N.T. at 13.) He stated that his knowledge of the test results was based solely upon his review of the quality control documents "generated for this sampling." (N.T. at 13.)

Following the hearing, the referee determined that Claimant was ineligible for benefits because of her positive drug test, and the UCBR affirmed. Claimant then appealed to this court.[5]

■ Initially, we recognize that employers have "a strong interest in maintaining a workplace that is free from the influence of drugs." *Rebel v. Unemployment Compensation Board of Review*, 555 Pa. 114, 120, 723 A.2d 156, 159 (1998). Our supreme court has succinctly summarized

---

**3.** Upon receipt of a sample, a lab ascensioner processes the paperwork. (N.T. at 11.) One of six technicians or technologists performs the initial screening test "by a technique of enzyme immunoassay ... on an automated analyzer." (N.T. at 11.) The analyzer's results are then downloaded to the Laboratory's host computer and a printout is made. (N.T. at 12.) When a specimen does not test completely negative, "an additional aliquot is removed from the original sample container for a secondary test, called expermatory test," which is performed by a more sensitive and specific "technique known as gas chromatography mass spectrometry...." (N.T. at 12–13.) The results of that test are again printed out by computer. (N.T. at 13.)

**4.** Dr. Constantino testified that an adulterated sample "is a sample to which something has been added to ... potentially nullify the drug test." (N.T. at 9.) He further testified that Claimant's second sample "had a pH or acid concentration that was lower than expected for normal human urine." (N.T. at 9.)

**5.** Our scope of review is limited to determining whether the UCBR's findings of fact are supported by substantial evidence in the record, whether errors of law were committed or whether constitutional rights were violated. *Broadus v. Unemployment Compensation Board of Review*, 721 A.2d 70 (Pa.Cmwlth. 1998).

the sinister effects drugs have on the workplace:

> Employees who have consumed drugs can incur reductions in their productivity, reliability, and competency, thereby adversely affecting the employer's interests. In turn, interests of customers can be detrimentally affected as well. There are also overriding concerns of safety and liability. Workplace safety is obviously undermined by employees who are impaired in their physical and mental capacities. Not only are fellow workers endangered, but the public is likewise placed at risk. The avoidance of injury, as well as concern for vicarious liability that can accrue to the employer, are legitimate interests of the employer that must be accorded substantial weight.

*Id.* Thus, here, Employer was unquestionably within its rights in requiring Claimant, a bus driver, to submit to a drug test. However, that does not relieve Employer of its burden to prove that the result of the drug test was, in fact, positive and that the sample that tested positive was, in fact, Claimant's sample.

█ The burden of proving willful misconduct rests with Employer. *See Broadus v. Unemployment Compensation Board of Review,* 721 A.2d 70 (Pa.Cmwlth. 1998). Willful misconduct includes the deliberate violation of an employer's rules and a disregard of standards of behavior that an employer has a right to expect of an employee. *Rebel.* "[A]n employee's failure to pass a drug test may constitute willful misconduct." *Waste Management v. Unemployment Compensation Board of*

*Review,* 168 Pa.Cmwlth. 633, 651 A.2d 231, 234 (1994), *appeal denied,* 541 Pa. 629, 661 A.2d 876 (1995).

█ In this appeal, Claimant argues that the UCBR's decision is not supported by substantial evidence for several reasons.[6] Claimant first contends that Employer failed to establish the chain of custody of Claimant's urine sample before it was received by the Laboratory for testing.[7] We agree.

█ Where, as here, a sample is not taken by the laboratory that prepared the test report, the employer, independently, must prove the chain of custody before the report may be admitted. *Broadus.* However, Employer offered absolutely no evidence in this regard. As stated, neither of Employer's employee relations representatives testified as to the chain of custody. Further, Employer's only other witness, Dr. Constantino, testified that he had no involvement in the chain of custody of Claimant's urine samples prior to receipt by the Laboratory. (N.T. at 14.)

We have held "that gaps in the chain of custody go to the weight to be given to the testimony and not to its admissibility." *Broadus* at 73. Here, however, there was not simply a gap in the chain of custody evidence; there was a complete absence of evidence regarding the custody of Claimant's urine sample from the time it was collected from Claimant until it was received by the Laboratory for testing. Employer simply has not established that the sample tested by the Laboratory actually was Claimant's.[8]

6. Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the findings of the UCBR. *Philadelphia Gas Works v. Unemployment Compensation Board of Review,* 671 A.2d 264 (Pa.Cmwlth.1996).

7. The purpose of chain of custody evidence is to link the results of the laboratory tests to the sample collected by Employer from Claimant. *See Broadus.*

8. *Compare Artis v. Unemployment Compensation Board of Review,* 699 A.2d 849 (Pa. Cmwlth.1997) and *Brunson v. Unemployment Compensation Board of Review,* 131 Pa. Cmwlth. 462, 570 A.2d 1096, *appeal denied,* 527 Pa. 603, 589 A.2d 693 (1990), where the employers presented detailed testimony describing the procedures followed for collection of the claimants' urine samples and the transfer of those samples to the laboratory that performed the tests.

**1032** ■■■■■■■■■■■■■■■■

■ Claimant next contends that Dr. Constantino's testimony regarding the results of Claimant's drug tests violates the UCBR's regulations governing admission of telephone testimony. Again, we agree.

The UCBR's regulation at 34 Pa.Code § 101.130 sets forth the procedure for receiving testimony from a witness by telephone. Section 101.130(e) requires that, before such a witness testifies from, or with the aid of, a document, the party offering the testimony must have provided the document to the opposing party.[9] Where a party fails to provide the document as required by section 101.130(e), the document "may not be admitted **nor testimony given or taken from it unless consent has been requested from and given by all parties**. Testimony taken or given in violation of this subsection will be excluded from consideration, as will the document." 34 Pa.Code § 101.131(h) (emphasis added).

Here, Claimant's counsel never waived the right to receive the drug test reports from the Laboratory, and Claimant's counsel specifically objected to Dr. Constantino's testimony with regard to the results of Claimant's tests on the ground that Claimant had not received the records relied upon by Dr. Constantino. (N.T. at 8.) *See Broadus.* Overruling Claimant's counsel's objection, the referee stated that Claimant was not entitled to receive any documents under the telephone regulations where the witness "is testifying from his own independent recollection." (N.T. at 9.) Here, however, Dr. Constantino's testimony was based, not on his independent

recollection of the actual drug testing but, rather, on his recollection of the drug testing documents. Dr. Constantino admitted to having no personal knowledge of any of the three drug tests and stated that his knowledge of the test results was based solely upon his review of documents. Dr. Constantino's testimony was wholly dependent upon records he had previously reviewed. We will not permit a party to circumvent the telephone regulations by having a witness with no personal knowledge of the events at issue review records in advance, and then claim it need not offer those records at the hearing. Accordingly, the referee erred in permitting Dr. Constantino to testify concerning the results of the drug tests, and the UCBR erred in relying on that testimony.[10]

■ For the foregoing reasons, Employer has failed to establish that Claimant was guilty of misconduct in order to deny her unemployment compensation benefits. Accordingly, we reverse the UCBR's decision.[11]

### ORDER

AND NOW, this 11th day of April, 2000, the order of the Unemployment Compensation Board of Review, dated March 29, 1999, is hereby reversed and benefits are granted.

Jurisdiction relinquished.

9. 34 Pa.Code § 101.130(e) provides:

> When any testimony will be given from or with the aid of a document not previously distributed to the parties by the tribunal, the party expecting to introduce the document shall deliver it to the tribunal, and the tribunal shall distribute it to each other party and, if known, counsel or authorized agent before or at the beginning of the testimony. The tribunal may require that the documents be delivered up to 5 days in advance of the hearing.

10. Because of our holding here, we need not address Claimant's alternative argument that Dr. Constantino's testimony concerning the results of Claimant's drug tests was insufficient, in the absence of corroboration, to establish that Claimant tested positive for drug use.

11. We note that Claimant was ably represented before the referee, the UCBR and this court by a student from the Duquesne University School of Law Unemployment Compensation Clinic.