IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Raymond J. Kertesz, :
:
Petitioner :
:
v. : No. 1450 C.D. 2017
: Submitted: June 7, 2018
Unemployment Compensation :
Board of Review, :
:
Respondent :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: June 28, 2018

Raymond J. Kertesz (Claimant) petitions for review from the order of the Unemployment Compensation Board of Review (Board) that determined that he was ineligible for unemployment compensation (UC) benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law)[1] (relating to willful misconduct). Claimant challenges the Board's findings, credibility determinations and evidentiary ruling. Upon review, we affirm.

## I. Background

Claimant worked for Tobias Associates, Inc. (Employer) as a senior field service engineer from October 2002, until his last day of work on January 20,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

2017. After his separation from employment, Claimant applied for UC benefits, which a local service center denied. Claimant appealed, and a referee held a hearing.

At the hearing, the referee heard testimony and received evidence from Claimant, who was represented by counsel; Eric Tobias, Employer's Representative; and John Finley, Employer's Customer Service Supervisor (Supervisor). Based on the testimony and other evidence presented, the referee found that Claimant refused to comply with Employer's directive to make a network cable, without justification. The referee concluded that Claimant's insubordinate behavior constituted willful misconduct rendering him ineligible for UC benefits under Section 402(e) of the Law. The referee denied Claimant's request to keep the record open after the hearing to produce evidence regarding the customer's expectations concerning the network cable. Claimant appealed.

The Board, based on the record created at the referee's hearing, found the following facts. Employer installs network computer systems for its customers. Employer has the resources to make network cables and manufactures handmade network cables on a regular basis. On January 19, 2017, Supervisor directed Claimant to make a handmade network cable. Supervisor needed the network cable for a service call to a customer scheduled for January 23, 2017. Claimant yelled at Supervisor that if Supervisor had told him about needing the cable before that date, Claimant could have bought one rather than making one. Supervisor told Claimant that he did not want to buy a cable because Employer had the resources to make good network cables. Claimant complained that it would take him three hours to make a network cable, at which time Supervisor raised his voice and replied, "I don't care, I want you to make the cable." Claimant shouted at Supervisor: "Poor planning on your part does not make it an emergency on my part." Supervisor warned

2

Claimant that he was in danger of being fired, and Claimant yelled that Supervisor was threatening him. Claimant then retreated to his office. Supervisor waited five minutes and then went into Claimant's office to further discuss the directive. Claimant yelled at Supervisor to get out of his office and then left the premises, after telling the human resources representative that he was leaving and using personal leave time. The next day, Claimant returned to work and was discharged for insubordination. Claimant never informed Employer that he believed Employer was incapable of producing a good quality network cable for the customer due to faulty equipment. Board Opinion, 9/19/17, Findings of Fact (F.F.) Nos. 2-14.

The Board found the testimony of Supervisor credible and that his directive to Claimant to make the cable was reasonable. Although Claimant testified that Employer did not have adequate equipment for him to produce a good quality network cable for the customer, the Board did not find this testimony credible. The Board explained that Claimant never complained to Employer that he was incapable of producing a good quality network cable due to faulty equipment. Rather, Claimant only complained that it would take him three hours to build the cable. Claimant was unwilling to further discuss the directive or comply with it. Ultimately, the Board concluded that Claimant refused to comply with a reasonable directive without good cause.

The Board also concluded that the referee afforded Claimant a full and fair hearing and did not act improperly in denying Claimant's request to keep the record open after the hearing. The Board found that any evidence about the customer's expectations in regards to the network cable was irrelevant. The issue was whether Claimant's refusal of Employer's directive to manufacture a network cable constituted willful misconduct. Thus, the Board determined Claimant was

ineligible for benefits under Section 402(e) of the Law. Claimant's petition for review to this Court followed.[2]

## II. Issues

Claimant contends that the Board erred or abused its discretion in denying him UC benefits. Claimant asserts that he was fired for voicing his concerns regarding an inferior cable, which does not constitute willful misconduct. Claimant challenges the Board's credibility determinations because the Board never heard or observed the testimony. Claimant also challenges the Board's findings as unsupported by substantial evidence. Specifically, Claimant contests the Board's findings that: the customer's expectations were irrelevant; Supervisor's directive to make the cable was reasonable; Claimant never complained to Employer about the inferior quality of a handmade cable; Claimant was unwilling to further discuss or comply with the directive; and, Claimant's actions were not justified or reasonable under the circumstances. Finally, Claimant argues that the Board erred in upholding the referee's refusal to allow Claimant to present evidence regarding the customer's actual expectations on the basis that such evidence is irrelevant.

## III. Discussion

Section 402(e) of the Law provides, "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge . . . from work for willful misconduct connected with his work . . . ." 43 P.S. §802(e). "[W]illful misconduct is defined by the courts as: (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3)

---

[2] Our review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. 2 Pa. C.S. §704; *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006 (Pa. Cmwlth.), *appeal denied*, 97 A.3d 746 (Pa. 2014).

4

disregard of the standards of behavior which an employer can rightfully expect from an employee; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 (Pa. Cmwlth.), *appeal denied*, 97 A.3d 746 (Pa. 2014) (citing *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422 (Pa. 2002)).

The employer bears the initial burden of proving a claimant engaged in willful misconduct. *Johns*, 87 A.3d at 1009. When asserting a discharge based on a violation of a work rule, an employer must establish the existence of the rule, the reasonableness of the rule, the claimant's knowledge of the rule, and its violation. *Id.* (citing *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 344 (Pa. Cmwlth. 2008)). A determination of whether an employee's actions amount to willful misconduct requires a consideration of "all of the circumstances, including the reasons for the employee's noncompliance with the employer's policy or directives." *Navickas v. Unemployment Compensation Board of Review*, 787 A.2d 284, 288 (Pa. 2001) (quoting *Rebel v. Unemployment Compensation Board of Review*, 723 A.2d 156, 158 (Pa. 1998)).

Once an employer meets its burden, the burden shifts to the employee to prove good cause for his actions. *Johns*, 87 A.3d at 1010. An employee establishes good cause where his actions are justified or reasonable under the circumstances. *Docherty v. Unemployment Compensation Board of Review*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006). "'Good cause' has been described as requiring a 'balanc[ing of] the reasonableness of the supervisor's directive against the reasonableness of [the claimant's] refusal.'" *Connelly v. Unemployment Compensation Board of Review*, 450 A.2d 245, 246 (Pa. Cmwlth. 1982) (quoting

5

*Patterson v. Unemployment Compensation Board of Review*, 430 A.2d 1011, 1014 (Pa. Cmwlth. 1981)).

Further, in UC cases, the Board is the ultimate fact-finder and is empowered to resolve all issues of witness credibility, conflicting evidence and evidentiary weight. *Ductmate,* 949 A.2d at 342. It is irrelevant whether the record contains evidence that would support findings other than those made by the Board; the proper inquiry is whether the evidence supports the findings actually made. *Id.* Additionally, the party prevailing below is entitled to the benefit of all reasonable inferences drawn from the evidence. *Id.*

Here, Claimant argues that the Board's findings are not supported by substantial evidence. Specifically, Claimant challenges the Board's finding that Claimant never informed Employer that he believed Employer was incapable of producing a good quality network cable for the customer. F.F. No. 14. Claimant also contends Employer's request to make the cable, given Claimant's inferiority concerns, was unreasonable.

The Board's findings are supported by Supervisor's testimony that Claimant only objected to the amount of time it would take to make the cable, not the quality of the cable. Specifically, Supervisor testified:

> I asked [Claimant] if he could make a network cable for me at which point [Claimant] started yelling at me. He says why didn't I tell him before? He would've gone out and bought one. I told him I did not want it purchased. I wanted to make it ourselves. I feel that we have the ability to make very good cables and we've done it for years. At which point [Claimant] started yelling even more at me walking down the corridor and saying that it'll take me three hours to make this cable at which point I told him I don't care, I want you to make the cable. I don't want you to go out and buy one. And then he looked – turned to me and shouted at me[:] poor planning on your part does not

6

make it an emergency on my part. At which point I informed [Claimant] that he was close to being fired at that point in time, and then he raised his voice even more yelling at me that I was threatening him. He then returned to his office. I gave him a couple minutes to calm down a little bit. When I went into his office to sit down I basically went to tell him hey, [Claimant], we need to sit down and talk about this. As soon as I said [Claimant] he looks up at me and shouts at me to get out of his office. I said but, [Claimant], we need, and as soon as I got need out again he shouted at me to get out of his office. He then proceeded to pack up his things after I left his office and then he left the premises.

Certified Record (C.R.), Referee's Hearing, Notes of Testimony (N.T.), 4/25/17, at at 16. Supervisor consistently testified that Claimant objected to the directive because it would take him three hours to make the cable. N.T. at 18, 26. According to Supervisor, Claimant did not offer any explanation or concerns for why he was refusing to make the cable. N.T. at 18, 26. Claimant did not make the cable, and instead left the work site. Supervisor directed another employee to make the cable. N.T. at 18. Supervisor opined that handmade cables are better than machine-made cables. N.T. at 22. Although Claimant testified that he tried to explain to Supervisor that his primary concern was for the quality of the cable, N.T. at 29, the Board credited Supervisor's testimony. Supervisor's testimony is competent evidence to support the Board's findings in this regard.

Claimant also challenges the Board's conclusion that Claimant "refused" to make the cable. Claimant contends the Board's characterization of the incident as a "refusal" is not supported by the evidence. The credited evidence shows that Supervisor asked Claimant to make the cable three times, Claimant protested based on the amount of time that it would take, Claimant shouted at Supervisor, Supervisor warned Claimant of his conduct, and Claimant yelled again

7

and walked away. N.T. at 16. Supervisor attempted a fourth and last time to discuss the directive, Claimant told Supervisor to leave his office, left the premises and did not make the cable. N.T. at 16. Such evidence supports the Board's conclusion that Claimant refused Employer's directive.

Notwithstanding, Claimant argues that the Board erred in not finding that he had good cause for his actions. Claimant contends he specifically relied upon Employer's express policy and acted in Employer's best interests by voicing his concerns regarding the cable. Employer's handbook provides:

> *We are proud of our reputation for high quality and customer concern.* It is through your efforts that we can maintain and expand our position . . . No matter what your position in the company, YOU count. We care about you and hope that you will learn to care for the company . . . *If you have any suggestions or complaints please feel free to voice them.*

C.R., Item No. 9, Claimant's Exhibit No. 1 (Employee Handbook) (emphasis added). At the hearing, Employer confirmed that the quality of the work product is very important and that employees are encouraged to voice their concerns regarding quality. N.T. at 11-12, 20-21. Claimant testified that there were quality concerns regarding handmade cables and that he did not believe that making the cable was in Employer's best interests. N.T. at 32. Claimant maintains that he voiced his concerns to Employer. According to Claimant, such constitutes good cause for his actions.

However, the Board credited Supervisor's version of the events over Claimant's that such concerns were never voiced. Such credibility determinations are within the Board's province and are beyond our review. *See Ductmate*, 949 A.2d at 342. Moreover, Claimant's own testimony does not show that he actually

communicated his concerns to Employer. Claimant testified that he "was trying to explain" and "trying to tell" Supervisor his concern regarding the quality of the cable and the reputation of the company. N.T. at 29. Even if the Board had credited Claimant's testimony, it merely evidences Claimant's desire or attempt to advise Employer of his concerns, not that he actually conveyed such concerns. Upon review, the Board's findings are supported by substantial evidence and support a determination of willful misconduct without just cause.

Finally, insofar as Claimant challenges the referee's refusal to allow evidence regarding the customer's actual expectations, this argument also fails.[3] Any proffered evidence regarding the customer's expectations was irrelevant because Claimant's stated objection was based on the time it would take to make the cable, not the customer's expectations regarding the quality of the cable. Therefore, the referee did not abuse her discretion by refusing Claimant's request to keep the record open to enter evidence regarding the customer's expectations.

---

[3] As this Court has held:

> Pursuant to 1 Pa. Code §35.231, a petition to re-open for the purpose of taking additional evidence must include facts that constitute grounds for re-opening the proceeding, including "material changes of fact or of law alleged to have occurred since the conclusion of the hearing." Whether to grant or deny a request to re-open the record is within the discretion of the presiding officer. On appeal, the decision of the presiding officer will not be reversed absent a clear abuse of discretion.

*Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 714 (Pa. Cmwlth. 2013) (internal citations omitted).

## IV. Conclusion

In conclusion, the record contains substantial evidence to support a termination for willful misconduct. Claimant did not establish good cause for his actions. Therefore, the Board did not err in determining Claimant was ineligible for UC benefits under Section 402(e) of the Law.

Accordingly, we affirm.

_____

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Raymond J. Kertesz,          :
                           :
              Petitioner    :
                           :
          v.             : No. 1450 C.D. 2017
                           :
Unemployment Compensation    :
Board of Review,               :
                           :
          Respondent :

O R D E R

AND NOW, this 28th day of June, 2018, the order of the Unemployment Compensation Board of Review, dated September 19, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge