Christopher JOHNS, Petitioner

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 24, 2014.

Decided March 21, 2014.

Jessica B. Michael, Pittsburgh, for petitioner.

Anthony R. Holbert, Certified Legal Intern, and Shawn Westhafer, Assistant Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, and COLINS, Senior Judge.

OPINION BY Judge SIMPSON.

Christopher Johns (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) that denied his claim for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (Law) (relating to willful misconduct).[1] Claimant asserts the Board erred in determining he threatened a co-worker, without considering the conditional nature of his phrasing. Additionally, Claimant argues the Board erred in finding he made a threat in the first instance. We affirm.

## I. Background

Claimant worked for UPMC (Employer), a medical center, as a customer service representative for more than five years. Claimant suffers from an unspecified emotional disability, for which Employer provided accommodation through Work Partners. Employer engaged Work Partners to serve as Claimant's advocate. Reproduced Record (R.R.) at 10a–11a.

Shortly before his termination, Claimant contacted Work Partners about going on short-term disability, while he changed medication. There was some concern that work stress would adversely affect Claimant during his transition between medications. When he could not reach Tanya Hughes, his advocate at Work Partners (Advocate), he became visibly upset.

Co-workers alerted Claimant's supervisor, Christina Vivola (Supervisor) that Claimant appeared agitated. In response, Supervisor asked Claimant to discuss the source of his distress in an empty office, away from the customer service floor. No one witnessed their conversation. It was during this closed-door meeting that

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e).

Claimant made the alleged threat against Advocate.

On the following work day, Employer's senior customer service manager and customer service director (Senior Staff) called Claimant into a meeting with a representative from human resources. Supervisor, who reports to Senior Staff, was not present at this meeting. Senior Staff advised Claimant that Supervisor accused him of making threats against a co-worker. At Senior Staff's request, Claimant submitted a written statement to Employer about his meeting with Supervisor. In his statement, Claimant conceded he was "upset with" Advocate when he could not reach her when he called. R.R. at 43a. However, he denied that he would "hurt someone." *Id.*

Employer then suspended Claimant pending an investigation. Ultimately, Employer terminated Claimant's employment, citing violation of its policy against "threatening, abusing, or doing harm to others." R.R. at 5a.

Claimant applied for UC benefits, which the local service center granted. Employer appealed to a referee.

The referee held a hearing. During the hearing, Claimant, represented by counsel, and three witnesses for Employer, also represented by counsel, testified. The referee reversed the local service center, finding Claimant committed willful misconduct. Claimant appealed to the Board.

After making its own findings, the Board concluded Claimant committed willful misconduct in that he threatened to hurt another person, in violation of Employer's policy. Bd. Op., 7/22/13, Finding of Fact (F.F.) No. 6. Specifically, the

Board found that Claimant "stated that he was very frustrated with an employee of Work Partners and, if he saw her, he would likely hurt her." F.F. No. 5. The Board reasoned that it was irrelevant that Claimant communicated the threat to a third party, other than the person to whom it was directed. That is because such conduct creates discord and it is disruptive. Bd. Op. at 2.

■ Claimant now petitions for review.[2]

Claimant argues there is insufficient evidence of willful misconduct. Claimant contends Employer did not establish a policy violation because there is no evidence of a threat. He claims he had no intent to harm anyone. The lack of intent is indicated by the impossibility of acting on the threat as Advocate was not in the building at the time. Alternatively, Claimant asserts, even assuming there was evidence that he stated he "could've hurt her" (if Advocate was in the building), such a statement is *de minimis.* R.R. at 6a.

## II. Discussion

### A. Willful Misconduct

■ Initially, we note, willful misconduct is defined by the courts as: (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations. *Grieb v. Unemployment Comp. Bd. of Review*, 573 Pa. 594, 827 A.2d 422 (2002). The employer bears the initial burden of establishing a claimant engaged in willful misconduct.

**2.** Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. *Doyle v. Unemployment Comp. Bd. of Review,* 58 A.3d 1288 (Pa.Cmwlth.2013).

*Id.* Whether a claimant's actions constitute willful misconduct is a question of law fully reviewable on appeal. *Id.*

The issue of whether Claimant's conduct constituted willful misconduct under Section 402(e) of the Law is a question of law fully reviewable by this Court. *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338 (Pa.Cmwlth.2008). Further, Employer bears the initial burden of showing Claimant's conduct rose to the level of willful misconduct. *Id.*

### 1. Policy

■ Where, as here, the determination of willful misconduct is based on the violation of a work rule, an employer must establish existence of the rule, the reasonableness of the rule, the claimant's knowledge of the rule, and its violation. *Ductmate.* If the employer does so, the burden shifts to the claimant to show good cause for the rule violation or the unreasonableness of the policy. *Id.*

The policy here prohibited "threatening, abusing, or doing harm to others." R.R. at 38a. The record supports the Board's finding as to the existence of the policy. R.R. at 5a. The record also supports Claimant's awareness of it. F.F. No. 2; R.R. at 4a. A policy against threats in the workplace is reasonable. *Sheets v. Unemployment Comp. Bd. of Review*, 708 A.2d 884, 884 (Pa.Cmwlth.1998) (holding a claimant's threat that he "may ... shoot" a co-worker violated the rule).

■ It is well-settled that threats of harm toward a co-worker or supervisor constitute willful misconduct under the Law. *See Sheets; Andrews v. Unemployment Comp. Bd. of Review*, 159 Pa. Cmwlth. 455, 633 A.2d 1261 (1993). Therefore, we must assess whether the statement Claimant communicated to Supervisor constituted a "threat" against Advocate.

### 2. Threat

■ In the willful misconduct context, this Court defined a threat "as a communication that conveys an 'intent to inflict harm or loss on another or on another's property.'" *Aversa v. Unemployment Comp. Bd. of Review*, 52 A.3d 565, 571 (Pa.Cmwlth.2012) (quoting BLACK'S LAW DICTIONARY 1519 (8th ed. 2004)). Absent intent, the words of the statement itself must objectively establish a threat. *Id.* In addition to the words used in a threat, this Court is mindful of the effect the statement has on the hearer, and the reasonableness of construing the statement as a credible threat in context. *See, e.g., Sheets* (noting co-worker who overheard statement believed the claimant was serious).

Our Supreme Court's test to discern a "true threat" [3] in a non-criminal case (expulsion of student from school) informs our analysis here. *See J.S. v. Bethlehem Area Sch. Dist.*, 569 Pa. 638, 807 A.2d 847

---

**3.** A "true threat" is a serious expression of an intent to harm as distinguished from hyperbole, jest, or other innocuous talk or political expressions. *J.S. v. Bethlehem Area Sch. Dist.*, 569 Pa. 638, 656, 807 A.2d 847, 858 (2002). "True threats" fall within the narrow segment of speech that is not protected as free speech under the First Amendment to the United States Constitution, U.S. Const. amend. I. *Id.*

In *J.S.*, a divided Pennsylvania Supreme Court held that a profane and offensive student-created website addressing a teacher, which included a webpage entitled "Why Should She Die?" and another webpage soliciting money for a hitman, did not contain true threats warranting student discipline. *Id.* at 645, 807 A.2d at 851. Nevertheless, the Supreme Court upheld the expulsion of the student based on the actual and substantial disruption of the work of the school caused by the website. *Id.* at 673–74, 807 A.2d at 868–69.

(2002). In *J.S.*, to determine threatening nature, our Supreme Court applied a totality of the circumstances test. Relevant factors to consider are: "the statements, the context in which they were made, the reaction of listeners and others as well as the nature of the comments...." *Id.* at 656, 807 A.2d at 858.

Additionally, the *J.S.* Court cited with approval a decision from the Supreme Court of Wisconsin in a non-criminal case which served as a valuable guidepost in discerning whether certain speech falls within the narrow definition of a true threat, *In the Interest of A.S.*, 243 Wis.2d 173, 626 N.W.2d 712 (2001). *J.S.*, 569 Pa. at 655–56, 807 A.2d at 857–59. The Wisconsin Court stated that in a totality of circumstances evaluation, "[f]actors to be considered included how the recipient and other listeners reacted to the alleged threat; whether the threat was conditional; whether it was communicated directly to its victim; whether the makers of the threat had made similar statements to the victim on other occasions; and whether the victim had reason to believe that the maker of the threat had a propensity to engage in violence." *Id.* at 656, 807 A.2d at 858 (citing *A.S.*, 243 Wis.2d at 193, 626 N.W.2d at 720). Also relevant here, the Court noted that when applying this totality of the circumstances test "[i]t was not necessary that the speaker have the ability to carry out the threat." *Id.*

We consider these factors to discern the threatening nature of Claimant's communication here. First, we assess the communication itself.

In his main brief, Claimant acknowledges that Supervisor testified he said, "[i]f [Advocate] would've been in the building, he could've hurt her." Pet'r's Am. Br. at 21 (citing R.R. at 7a–8a). Supervisor also testified Claimant was very frustrated he could not reach Advocate at the time he made the statement. The Board credited this testimony. *See* F.F. No. 5 ("if he saw her, he would likely hurt her"); Bd. Op. at 2. Therefore, the record supports the Board's finding that Claimant made this statement against Advocate.

The communication in this case is similar to the threat in *Sheets*. In *Sheets*, the claimant was discharged for stating he "may as well shoot Carl and Steve and get it over with." *Id.* at 884. The Board deemed the language a threat, despite the fact that the claimant used the word "may" rather than a more definitive term. Based on that threat, the Board also determined the claimant violated the employer's rule against threats in the workplace. This Court agreed.

Significantly, Claimant here does not challenge the use of the word "hurt" in his expression. Rather, he asserts that he lacked intent, and he insists his phrasing was conditional in nature. "Hurt" is clearly a form of physical harm. Regardless of the verb tense, Claimant's communication qualifies as an expression of intent to inflict harm. *J.S.; Aversa.*

However, our inquiry does not end with the terms of the statement. Next, we consider the surrounding circumstances. These include Claimant's demeanor and the effect of his statement on the hearer, Supervisor, and others.

First, we acknowledge that the statement was made in the workplace.

Second, the Board credited Supervisor's concerns about Claimant's behavior on the date he made the communication. In her oral testimony, Supervisor explained that she was alerted to Claimant's distress by several alarmed co-employees. R.R. at 6a. In her typed statement, Supervisor noted that one of the employees advised her that he was concerned for Supervisor's safety "and that Christopher might hurt you one

day." R.R. at 41a (Employer Exhibit 2, Statement of Supervisor, admitted over hearsay objection; explaining subsequent conduct by the hearer in taking Claimant away from the work floor and behind a closed door for a one-on-one meeting). Thus, the record supports that Claimant created a disturbance in the workplace that alarmed his co-workers.

Third, in her oral testimony, Supervisor emphasized that Claimant appeared "very frustrated" and "upset." R.R. at 6a–7a. Supervisor recorded her observations regarding Claimant's demeanor that caused her concern as follows: "red in the face, twitching and bouncing around in his seat while making huffing and puffing noises with his mouth." R.R. at 41a (Employer Exhibit 2, Statement of Supervisor, admitted over hearsay objection; explaining subsequent conduct by the hearer in reporting Claimant's behavior). Further, Claimant's testimony regarding his state of mind as "really upset" corroborates Supervisor's oral testimony and written statement. R.R. at 13a, 43a.

Fourth, as a result of Claimant's "irate" demeanor, Supervisor became "very upset" over the things Claimant said about Advocate, R.R. at 7a, and this time Claimant's demeanor made her "nervous that, you know, he really could've hurt her after that meeting, if she would've been in the building." Id.; see also R.R. at 42a. (Employer Exhibit 2, Statement of Supervisor, received over hearsay objection; prior consistent statement). Thus, the reaction of the person hearing the communication, and Claimant's behavior towards others in the workplace, support a conclusion that the communication amounted to a true threat.

Fifth, none of the record evidence regarding the circumstances suggests that Claimant was provoked or that he was making the statement in a jocular manner.

Nevertheless, certain aspects of the circumstances militate against a conclusion that Claimant's statement amounted to a serious expression of intent to inflict harm. Thus, the statement was somewhat conditional; it was not communicated directly to the Advocate; the Advocate was not aware that the statement had been made; and, it was physically impossible for the Claimant to immediately act on the statement, because the Advocate was not at the workplace that day.

We believe that the evidence supporting a conclusion of a true threat, especially the words used, the demeanor of the Claimant, and the effect on the hearer, preponderate in favor of a conclusion that the communication amounted to a serious expression of intent to inflict harm. Therefore, we agree with the Board that Claimant's statement constituted a true threat against Advocate. As a consequence, Claimant violated Employer's policy.

### B. *De Minimis* Conduct

Lastly, Claimant argues his alleged violation is *de minimis* under the circumstances. This argument lacks merit and disregards applicable case law.

First, the *de minimis* argument does not apply to cases involving a rule violation. *Sheets; Gen. Elec. Co. v. Unemployment Comp. Bd. of Review*, 49 Pa. Cmwlth. 468, 411 A.2d 578 (1980). Here, Claimant's threat violated a rule.

Second, Claimant relies on case law inapposite to the case at bar. Claimant relies heavily upon a 30–year old decision by this Court, *Blount v. Unemployment Comp. Bd. of Review*, 77 Pa.Cmwlth. 627, 466 A.2d 771, 773 (1983). We distinguished this case in *Sheets*. In *Blount*, unlike this case, there was no mention that the claimant's behavior was in violation of any employer rule. *Sheets*. In addition, the

*Blount* Court concluded the remark was made and accepted as a joke. Here, there is no indication that the threat was made as a joke or accepted as a joke. Rather, the circumstances reflect the opposite.

In addition, the threat was not rendered *de minimis* because Advocate was not in the office. The fact that Claimant made the threatening statements to a third party rather than to the subject of the alleged threat is not dispositive. *Sheets,* 708 A.2d at 885 ("[i]t does not matter that the threat was communicated to a third party rather than the person to whom it was intended;" quoting *Andrews,* 633 A.2d at 1263). That Advocate was not present to be hurt also does not alleviate the serious nature of a threat to hurt a co-worker. Threats of harm, even if communicated only to a third party, "create[ ] discord and interrupt[ ] the employer's operation." *Sheets,* 708 A.2d at 885. However, it is noteworthy that these decisions pre-date our Supreme Court's decision in *J.S.,* and the totality of the circumstances test it establishes to discern threatening nature.

Moreover, our decisions that hold potential threats may not constitute willful misconduct require justifiable provocation in addition to the *de minimis* nature of the threat. *Reed v. Unemployment Comp. Bd. of Review,* 104 Pa.Cmwlth. 373, 522 A.2d 121 (1987). Unlike the other cases regarding *de minimis* threats that Claimant cites, there is no indication of provocation here. *See, e.g., Reed* (involving threat of physical violence in response to alleged provocation); *First Family Fed. Sav. & Loan Ass'n v. Unemployment Comp. Bd. of Review,* 68 Pa.Cmwlth. 578, 449 A.2d 870 (1982) (court may consider whether threat was conditional or whether employ-

ee indicated an intent to follow through with the threat).

For the first time, in his reply brief, Claimant asserts he was provoked and that the cessation of his program with Work Partners provided good cause for his outburst. However, Claimant failed to preserve any argument regarding provocation. Specifically, Claimant did not testify that he was provoked in the hearing before the referee, and he failed to raise it before the Board. Therefore, these issues are waived.[4] *See Chapman v. Unemployment Comp. Bd. of Review,* 20 A.3d 603 (Pa. Cmwlth.2011) (holding an allegation of error not raised before the referee or before the Board is waived on appeal).

### III. Conclusion

Here, the Board credited Supervisor's testimony that Claimant threatened Advocate. We examine the testimony "in the light most favorable to the prevailing party, giving that party the benefit of any inference that can logically and reasonably be drawn from the evidence." *Middletown Twp. v. Unemployment Comp. Bd. of Review,* 40 A.3d 217, 223 (Pa.Cmwlth. 2012). The record reflects that Claimant, while in a highly agitated state, expressed that he could "hurt" Advocate, and that his conduct made the hearer "very upset," and she believed "he really could've hurt [Advocate] after that meeting, if she would've been in the building." R.R. at 7a. The threat constituted a violation of Employer's policy, and willful misconduct.

For the foregoing reasons, we affirm the Board.

### *ORDER*

**AND NOW,** this 21st day of March, 2014, the Order of the Unemployment

---

4. In addition, Claimant did not assert good cause or provocation in either his petition for review or in his main brief. For these rea-

sons as well, he waived these arguments. *See McDonough v. Unemployment Comp. Bd. of Review,* 670 A.2d 749 (Pa.Cmwlth.1996).

Compensation Board of Review in the above-captioned matter is hereby **AFFIRMED**.