IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Minuteman Spill Response, Inc.,      :
                Petitioner      :
          :
        v.      :
          :
Unemployment Compensation      :
Board of Review,      :    No. 42 C.D. 2015
          Respondent      :    Submitted: July 17, 2015

BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY              FILED: August 11, 2015

Minuteman Spill Response, Inc. (Employer), challenges the order of the Unemployment Compensation Board of Review (Board) that reversed the Referee's determination that Curtis Tripp (Claimant)[1] was ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (Law).[2]

The facts, as found by the Board are as follows:[3]

1. The Claimant was last employed by [Employer], a service provider for the natural gas well industries, for a period of time from May 31, 2013 through July 25, 2014, at $16.00 per hour.

---

[1] Apparently, Claimant appeared *pro se* before the UC Referee and Board.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

[3] The Board uses "claimant" and "employer" rather than "Claimant" and "Employer" throughout its opinion. For the sake of presentation, we will use Claimant and Employer when quoting from the Board's opinion without noting each instance of its use.

2. The Employer's policy provides that employees are to keep the Employer's information confidential and to act in a professional manner.

3. The Claimant was aware of this policy.

4. The Claimant had initially been employed as a driver and because of some medical issues; [sic] the Claimant for the final month of his employment was working as a dispatcher on light duty.

5. Another dispatcher overheard the Claimant making remarks that were allegedly disparaging of the Employer.

6. The Claimant allegedly told drivers that he used to work with that the Employer was not going to be around [and] that the Employer was going broke.

7. The client's employees then reported those assertions to the Employer.

8. The Employer's human resources director then conducted an investigation and part of that investigation was an interview with the Claimant.

9. The Claimant denied that he had made disparaging remarks to any other employees of the company or to clients of the Employer.

10. The Claimant did admit that he had some discussions with a fellow driver trying to convince him to stay on with the Employer.

11. Those discussions covered questions as to whether or not the Employer would be financially solvent or in fact would stay in business.

12. The Claimant was aware that there was much made publicly about the Employer and its continued existence.

13. The Claimant was considering bringing a lawsuit against one of the Employer's clients, but did not discuss this in the presence of the Employer's witness.

14. The Claimant was discharged for allegedly making disparaging remarks to [sic] the Employer.

Board's Decision, December 17, 2014, (Board Decision), Findings of Fact (F.F.) Nos. 1-14 at 1-2.

The Board reasoned:

The Board resolves the conflicts in the testimony, in relevant part, in favor of the Claimant and finds his testimony to be credible.
….
Since the Claimant was discharged, the Employer has the burden of establishing that the discharge was for willful misconduct in connection with his work…The Employer has not met this burden.

The Claimant disputes the allegations by the Employer that he spoke to many employees in a disparaging way about the employer or a pending lawsuit that he was considering against one of the primary clients of the Employer…[T]he Claimant indicated at no time did he discuss that in the presence of the Employer witness. The Claimant then indicated that he only had one conversation with another driver attempting to persuade the driver from leaving that employment.

Board's Decision at 2-3.

Employer contends[4] that the Board erred when it found Claimant was not ineligible for benefits under Section 402(e) of the Law and that the Board

---

[4] In unemployment compensation cases, this Court's review is to determine whether the order of the Board is supported by substantial evidence, whether the adjudication was in accordance with the law, and whether constitutional rights were violated. 2 Pa. C.S. § 704; Devine v. Unemployment Compensation Review Board, 101 A.3d 1235, 1237 (Pa. Cmwlth. 2014).

failed to provide substantial evidence to support its decision to award benefits to the Claimant.

**I. Whether Claimant Was Ineligible For Benefits Under Section 402(e) of the Law?**

Section 402(e) of the Law, 43 P.S. § 802(e), provides that an employee shall be ineligible for compensation for any week "in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." "Willful misconduct" has been defined as the wanton and willful disregard of an employer's interests, deliberate violation of rules, disregard of the standards of behavior which an employer can rightfully expect form an employee, or negligence showing an intentional disregard of the employee's duties and obligations. Johns v. Unemployment Compensation Board of Review, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014). The employer bears the initial burden of establishing a claimant engaged in willful misconduct. Id. Where a violation of the employer's work rule is alleged as the basis for termination, the employer must show that the rule existed, the rule was reasonable, and claimant was aware of the rule and violated it. Oyetayo v. Unemployment Compensation Board of Review, 110 A.3d 1117, 1121 (Pa. Cmwlth. 2015). If the employer makes that showing, then the burden shifts to the claimant to show good cause. Id. Whether a claimant's actions constitute willful misconduct is a question of law which is fully reviewable by this Court on appeal. Johns, 87 A.3d at 1009.

Claimant testified that he was questioned by his supervisor, Lisa Stanchick, about discussing company business over the phone in possible violation of Employer's rules. Claimant testified:

I told her Chris Bowers is the one I was speaking with on the phone…When I worked with Chris he was a very good driver… And he had some concerns about the company's future… So I simply told him Chris from what I understand we're going to be all right…We got people [who have] been here a long time, should be okay no matter what happens with [the owner of Employer company's] charges…I said so I would wait, just hang in there…

Notes of Testimony, October 2, 2014, (N.T.) at 33.

Melanie Holub, who worked with Claimant, testified on behalf of Employer regarding Claimant's activities:

[H]e had explained to me how he was going to sue EQT which is one of our largest customers. It's known to everybody in the company if we'd lose EQT we'd be in real trouble.
….
When we're supposed to be calling them for their schedule and tell them what trucks to take to what rigs he would indulge in conversation as to trying to build his case, would they support him if he went up against EQT…
….
[It] was no secret he didn't want to be there.
….
He was telling the driver that he used to work with that they were not going to be around, [that Employer] was going under.

N.T. at 24-26.

The Board noted the existence of Employer's rule requiring employees to keep the Employer's information confidential and to act in a professional manner. Board Opinion, F.F. No. 2, at 1. The Claimant in this

controversy was employed as a dispatcher and allegedly discussed Employer's information over the phone. The dispute between Claimant and Employer was the nature and extent of those discussions.

Essentially, this controversy revolves around credibility. The Board is empowered to make credibility determinations and may accept or reject the testimony of any witness in whole or in part. Oyetayo, 110 A.3d at 1121. The Board found the Claimant to be credible and believed his version of the events and his explanation that he "only had one conversation with another driver attempting to persuade the driver from leaving that employment." Board Opinion at 3. The Employer in this controversy established that there was the existence of the requirement not to reveal Employer's confidential information and to act in a professional manner, but was unable to establish that the Claimant violated this requirement. The Board concluded that Claimant was not ineligible for benefits under Section 402(e) of the Law, 43 P.S. § 802(e).

**II. Whether the Board Erred When It Reversed the UC Referee?**

Employer contends that the Board failed to explain its reasons for rejecting the findings and the decision of the UC Referee, without addressing the testimony of the Employer's fact witness or explaining why it made contrary credibility determinations.

This Court recently stated the following concerning capricious disregard of evidence in unemployment compensation cases:

> A capricious disregard of evidence occurs where the fact finder willfully and deliberately disregards competent

6

and relevant evidence that one of ordinary intelligence could not have possibly have avoided in reaching a result.

….

The standard announced in Wintermyer[5] applies whether one or both parties present evidence, and thus, overruled this Court's earlier-announced paradigm that appellate review for capricious disregard of evidence was limited to the circumstance where the burdened party was the only party to present evidence and did not prevail.

***Disturbing an agency's adjudication for a capricious disregard of evidence is appropriate only where the fact-finder has refused to resolve conflicts in the evidence, has not made essential credibility determinations or has completely ignored overwhelming evidence without comment.***

….

An appellate court conducting a review for capricious disregard of material, competent evidence may not reweigh the evidence or make credibility determinations.

Wise v. Unemployment Compensation Review Board, 111 A.3d 1256, 1262-1263 (Pa. Cmwlth. 2015). (Citations omitted and emphasis added.)

The Board in this case made essential credibility determinations when it found Claimant to be credible, resolved conflicts in the evidence, and it noted the evidence presented. This Court finds that the Board did not capriciously disregard the evidence.

---

[5] Leon E. Wintermyer v. Worker's Compensation Appeal Board (Marlowe), 812 A.2d 478 (Pa. 2002). The Board asserts in its brief that the "capricious disregard" standard does not apply in this controversy because Wintermyer was a plurality opinion. This Court disagrees with that assessment of the law.

Accordingly, the order of the Board is affirmed.


_____
BERNARD L. McGINLEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Minuteman Spill Response, Inc.,      :
                   Petitioner     :
                                :
               v.              :
                                :
Unemployment Compensation  :
Board of Review,             :    No. 42 C.D. 2015
                   Respondent   :

# **O R D E R**

AND NOW, this 11th day of August, 2015, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.

_____
BERNARD L. McGINLEY, Judge