IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brien L. Readinger,      :
     : No. 1289 C.D. 2016
     Petitioner : Submitted: December 16, 2016
     :
     v.      :
     :
Unemployment Compensation      :
Board of Review,      :
     :
     Respondent :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                        FILED: June 5, 2017


Brien L. Readinger (Claimant) petitions *pro se* for review of the June 8, 2016 order of the Unemployment Compensation Board of Review (Board) that affirmed a referee's determination and held that Claimant was ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law). [1] We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e). Section 402(e) provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge from work for willful misconduct connected with his work.

Claimant began work as a full-time Water Plant Operator 1 with the Reading Area Water Authority (Employer) on March 23, 2015, and last worked during an overnight shift on March 4-5, 2016. On March 5, 2016, Employer discharged Claimant for leaving his position without being relieved by another operator. Claimant filed a claim for unemployment compensation benefits, but the local service center found that Claimant had committed willful misconduct and denied benefits under Section 402(e). Claimant appealed.

A referee held a hearing on May 3, 2016. Wendalin Narrero, Employer's Payroll and Human Resources Coordinator, testified that on March 4, 2016, Claimant was working the overnight third shift and left without clocking out and without being relieved by another operator. Narrero stated that, as a result, Employer sent Claimant a suspension letter dated March 7, 2016. Notes of Testimony (N.T.), 5/03/2016, at 12-14. She testified that, thereafter, Employer sent Claimant a termination letter, dated March 14, 2016, which read, in pertinent part:

> Your termination is the result of the incident that took place on Saturday, March 5, 2016[,] at the Maiden Creek Filter Plant. On that date, you informed your supervisor that you "quit" and then proceeded to leave your position as water treatment operator without having a replacement operator onsite, imperiling the customers of the water system.

Employer Exhibit E3; N.T. at 15.

Patrick Bauer, Employer's Chief Operator, testified that at 11:42 p.m. on Friday, March 4, 2016, he received a text message from Claimant with a question regarding a check. Bauer stated that when he called Claimant back, he realized that Claimant had responded to a text message that Bauer sent in December. Bauer informed Claimant that it was an old message and there was no

2

check. Bauer testified that he mistakenly called Claimant by a co-worker's name during the conversation and that Claimant began screaming that he was not respected in the work place, that he needed money, that there had been a recent break-in at his home, and that his car was recently vandalized. Bauer stated that after screaming about being treated poorly at work, Claimant said that he quit and hung up the phone. N.T. at 16-17.

Bauer testified that he sent Claimant a text message, asking that Claimant call him, and then received a phone call from Vasile Hrezdac, Employer's Maintenance Worker, who informed him that Claimant had left work and that Claimant's car was no longer in the parking lot. Bauer stated that he left for the plant and, during his drive to the plant, he received a text message from Claimant stating that he went home sick. Bauer testified that although he finished the remainder of Claimant's shift, the water plant was without a certified operator for approximately 22 minutes, in violation of Department of Environmental Protection (DEP) regulations requiring certain readings to be taken every 15 minutes and certain actions to be taken if those readings are irregular. N.T. at 17-18.

Bauer further testified that all operators fill out an operator's checklist at the beginning and end of their shifts to ensure that they do not forget anything important. At the bottom of the page, there are three notes, and Note #2 states that an operator may "NOT leave [his] work area until relieved." Service Center Exhibit 5A (emphasis in original); N.T. at 18-19.

Hrezdac testified that he was working on the second floor when Claimant called up to him from the first floor, screaming to Hrezdac that he was leaving and that he quit. N.T. at 20.

3

Claimant testified that he called Bauer on the night of March 4-5, 2016, to inquire about a check and that Bauer informed him that the text message Claimant received was an error. Claimant stated that he did not remember the precise content of his conversation with Bauer, but he acknowledged that he had been upset. He asserted that he had been harassed by nearly every employee at the plant regarding the check, but he did not elaborate as to the nature of the harassment. N.T. at 22-25.

Claimant stated that he did not remember who terminated his phone call with Bauer. He also testified that he did not remember receiving a text message from Bauer after their phone call and that was the reason he did not call back. Claimant stated that he did not recall sending a text message to Bauer informing him that he was going home sick in response to Bauer's message, but admitted he may have sent the message. N.T. at 25-26.

Claimant testified that he is an asthmatic and that he was not feeling well that night. Claimant testified that he informed both Bauer and Hrezdac that he was leaving early because he was not feeling well and that he never said that he quit. N.T. at 25-26.

Claimant further testified that he signed the operator's checklist, but said that he had never been properly trained regarding the requirement that he not leave his station until he was relieved by a replacement operator. Claimant admitted that he did not wait for a replacement before leaving his work area. N.T. at 27-28.

The referee affirmed the service center's denial of benefits. The referee found that Claimant should have been aware of Employer's policy and, nevertheless, left his work area without being relieved by another operator. The

4

referee credited Bauer's testimony that Claimant stated that he quit during their phone call. The referee did not question that Claimant was feeling unwell when he left work, but determined that anger, not illness, was Claimant's primary motivator for leaving work on his last day. The referee concluded that Claimant committed willful misconduct and was ineligible for benefits under Section 402(e) of the Law.

Claimant appealed to the Board, arguing that he was not properly trained on the policy that he not leave his work area without relief, nor was he aware of the possible consequences that would result from violating the policy. Claimant also asserted that even if he had quit, he would not have been ineligible for benefits under Section 402(b) of the Law;[2] according to Claimant, the work environment was hostile, he was harassed about his illness, he was threatened with a gun, and his "safety, health, and morals" were threatened by other employees' misuse of Employer's equipment. Record Item No. 11.

By decision and order dated June 8, 2016, the Board affirmed the decision of the referee and held that Claimant was ineligible for benefits under Section 402(e) of the Law. Specifically, the Board found that Employer's checklist states that operators are not to leave work without relief, in accordance with DEP regulations. Board's Findings of Fact (F.F.) Nos. 2-3. The Board also found that, after a confrontation with Bauer, Claimant left his position without being relieved, leaving Employer without an operator on location for 22 minutes. F.F. Nos. 4-14. The Board concluded that Claimant's actions violated a known, reasonable employment policy. The Board rejected as not credible Claimant's

---

[2] Section 402(b) of the Law provides that an employee shall be ineligible for compensation for any week in which his employment is due to voluntarily leaving work without cause of a necessitous and compelling nature. 43 P.S. §802(b).

5

assertion that he left because he was sick and concluded that Claimant did not credibly establish good cause for leaving his work site without waiting for a replacement. The Board added that, had it decided the case under Section 402(b) of the Law, it likewise would have denied benefits because Claimant failed to make a reasonable effort to maintain his employment. The Board subsequently denied Claimant's request for reconsideration.

On appeal to this Court,[3] Claimant argues that the Board erred in concluding that Employer met its burden of proving that he committed willful misconduct. Claimant asserts that Employer has no rule that prohibits leaving work due to illness and that his illness constituted good cause for his leaving work during his shift.[4]

Whether an employee's actions constitute willful misconduct is a legal determination fully reviewable by this Court. *Guthrie v. Unemployment Compensation Board of Review,* 738 A.2d 518, 521 (Pa. Cmwlth. 1999). Although not defined in the Law, "willful misconduct is defined by the courts as: (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations." *Johns v.*

---

[3] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, and whether necessary findings of fact are supported by substantial evidence. *Kirkwood v. Unemployment Compensation Board of Review,* 525 A.2d 841, 843-44 (Pa. Cmwlth. 1987).

[4] Although Claimant maintains that he did not quit, he again complains that he would not be ineligible under Section 402(b) because conditions in his workplace provided necessitous and compelling cause to leave his employment voluntarily. However, Claimant's eligibility under Section 402(b) is not at issue in this appeal.

6

*Unemployment Compensation Board of Review,* 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014). Where an employer seeks to deny unemployment compensation benefits based on a work rule violation, the employer must prove the existence of a reasonable work rule and the employee's violation of the rule. *Maskerines v. Unemployment Compensation Board of Review*, 13 A.3d 553, 557 (Pa. Cmwlth. 2011). If the employer meets its burden, the burden then shifts to the claimant to demonstrate good cause for his actions. *Johns,* 87 A.3d at 1010.

The Board is the factfinder in unemployment compensation cases, empowered to determine credibility of witnesses and resolve conflicts in evidence. *Curran v. Unemployment Compensation Board of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000). "[T]he Board . . . may reject even uncontradicted testimony if it is deemed not credible or worthy of belief." *Stockdill v. Unemployment Compensation Board of Review*, 368 A.2d 1341, 1343 (Pa. Cmwlth. 1977). We are bound by the Board's findings so long as there is substantial evidence in the record, taken as a whole, supporting those findings. *Guthrie,* 738 A.2d at 521.

Here, the Board credited Employer's evidence that it had a known, reasonable rule and that Claimant was discharged for violating the rule. The Board rejected as not credible Claimant's statements that his primary reason for leaving work without being relieved was due to illness. Based on the credible testimony offered by Employer, the Board determined that Claimant intended to leave his employment and did so without waiting for a replacement.

Despite Claimant's assertions that he was not trained regarding Employer's rule and that Employer's witnesses lied at the hearing, we are bound by the Board's credibility determinations and findings of fact, so long as they are supported by substantial evidence. *Guthrie*, 738 A.2d at 521. Upon careful review

7

of the record, we find ample support for the Board's findings, which in turn support the Board's denial of benefits under Section 402(e) of the Law.

Accordingly, we affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brien L. Readinger,          :
                       : No. 1289 C.D. 2016
            Petitioner  :
                       :
        v.             :
                       :
Unemployment Compensation  :
Board of Review,          :
                       :
           Respondent :

## O R D E R

AND NOW, this 5th day of June, 2017, the order of the Unemployment Compensation Board of Review, dated June 8, 2016, at No. B-16-09-B-2370, B-589823, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge