IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Denice L. Walthour,                      :
                        Petitioner       :
                                         :
            v.                           :
                                         :
Unemployment Compensation                :
Board of Review,                         :        No. 429 C.D. 2021
                        Respondent       :        Submitted: December 30, 2021


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge[1]
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION
BY JUDGE FIZZANO CANNON              FILED: May 12, 2022


            Denice L. Walthour (Claimant), *pro se*, petitions for review of an order
of the Unemployment Compensation Board of Review (Board), which affirmed a
Referee's decision dismissing Claimant's appeal of the denial of her request to
backdate her application for benefits as untimely under Section 501(e) of the
Unemployment Compensation (UC) Law (UC Law).[2]  Upon review, we vacate and
remand.

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn
Jubelirer became President Judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §
821(e).  Section 501(e) of the Law provides, as follows:

> (e) Unless the claimant . . . files an appeal with the [B]oard, from
> the determination contained in any notice required to be furnished
> by the [Department of Labor and Industry (Department)] . . . within
> fifteen calendar days after such notice . . . was mailed to his last

On August 3, 2020, Claimant filed her initial claim for UC benefits. Certified Record (C.R.) 9-12. She reported working for Wal-Mart Associates, Inc. (Employer) from August 4, 2006, through July 30, 2020. C.R. 10. She indicated that she had not been terminated by Employer. *Id.* However, she claimed that she was unable to work because her doctor advised her to self-quarantine due to "medical risk" related to COVID-19 (COVID). C.R. 12.

On August 28, 2020, Claimant completed a questionnaire requesting to backdate her application for benefits to March 15, 2020, in order to include UC claim weeks ending March 21, 2020, through June 20, 2020. C.R. 14-15, 22. Claimant stated that she delayed filing her initial claim because she did not "know [she] could file for anything, [and she] used all [her] sick and vacation time . . . ." C.R. 14. Claimant also advised that she was only available for work that could be done from home due to her COVID medical restrictions. C.R. 15.[3]

On September 2, 2020, the UC Service Center issued a determination denying Claimant's request to backdate her claim for benefits under Section 401(c) of the UC Law, 43 P.S. § 801(c) (relating to qualifications required to secure compensation). C.R. 22-24. The UC Service Center indicated that Claimant

known post office address, and applies for a hearing, such determination of the department, with respect to the particular facts set forth in such notice, shall be final and compensation shall be paid or denied in accordance therewith.

We note that Section 501(e) was amended by the Act of June 30, 2021, P.L. 173, to extend the mandatory filing period to 21 days. We nevertheless reference the version of Section 501(e) that was in effect at the time the UC Service Center rendered its decision in this matter.

[3] On September 9, 2020, Employer informed the UC Service Center that it employed Claimant as a gas station attendant, and that she remained a full-time employee. Certified Record (C.R.) at 17-18. Employer further informed that Claimant was placed on authorized "C[OVID] leave" without pay. *Id.* at 18. Employer also advised that Claimant's last day of work was July 30, 2020, and that her return date was yet to be determined. *Id.*

2

requested permission to backdate her claim because she was unaware, prior to August 2020, that she was eligible for benefits under the UC Law. C.R. 22. However, according to the UC Service Center, "[C]laimant's reason for requesting backdating did not meet the requirements for which backdating could be allowed." *Id*. The UC Service Center's determination further indicated that the last day to file a timely appeal of the determination was September 17, 2020. *Id.* at 22-24. Claimant filed her petition for appeal of the determination on October 9, 2020. *Id.* at 26. Included with the appeal was an email from a UC Service Center email address, reporting that Claimant gave the following statement regarding her appeal:

> I called 888-313-7284 today (10/09/2020) because I never received a reply for an appeal, that was I [sic] sent back. She informed me the date of determination (09/11/20) was denied. I never received a letter for that outcome, and I would like to file that appeal. I faxed my pay stubs . . . . My medical doctor directed me to quarantine because of C[OVID] exposure, from 03/16 to 06/26/2020. I exhausted all vacation, personal and sick time that I had. At that time[, I] was unaware that I could apply!

C.R. 28.[4] Also included in the email was Claimant's phone number ending in -8576.[5] *Id.*

A telephonic hearing was scheduled before the Referee for December 22, 2020, at 4:00 p.m., to consider (1) whether Claimant filed a timely and valid appeal from the determination, and (2) whether she filed a valid application for

---

[4] The email listed the date of the UC Service Center determination as September 11, 2020. However, the correct date of the determination is September 2, 2020. *See* C.R. 22.

[5] This appears to be Claimant's cell phone number. *See* C.R. 62.

3

benefits.  C.R. 35.  The hearing notice included the following instructions regarding the parties' participation in the telephone hearing:

> Please be advised that the Referee will be calling parties on a telephone line that will not display the originating telephone number.  Some telephones have the capability of blocking incoming calls for which no originating number is displayed.  If your telephone number blocks such calls and if you expect to participate in the hearing by telephone, **it is your responsibility to ensure that you are able to accept the call to participate in the hearing**.

*Id.* (emphasis in original).  The hearing notice listed Claimant's phone number as one ending in -8763.[6]  *Id.*

At the time of the scheduled hearing, the Referee called Claimant's phone number ending in -8763, and received the following message:  "The party you are trying to reach does not accept calls from numbers with caller ID blocked.  Please unblock your number by dialing star 82 and try your call again."  C.R. 49.  The Referee stated that he would "go off the record for a few minutes to see if [] Claimant contacts the office in an effort to participate."  *Id.*

While off the record, the Referee received an email at 4:18 p.m., from Christine Mols, a clerk typist in his office, explaining that Claimant had "just called for [the] hearing at 4:00[ p.m.,]" and that she said she did not receive a phone call regarding the hearing.  C.R. 51.  Ms. Mols provided Claimant's phone number ending in -8763 to the Referee.  *Id*.  The Referee replied to Ms. Mols' email at 4:20 p.m., advising that he "was unable to reach [Claimant at that number] because [he] received the message that calls with Caller ID blocked are not accepted."  *Id.*  The

---

[6] This appears to be Claimant's home phone number, which she provided on various UC documents.  *See* C.R. 62; *see also id.* at 3, 26, 35.

4

Referee then went back on the record and explained that Claimant had contacted his office but did not provide an alternative means of contacting her, that the hearing notice was mailed to Claimant's address on December 8, 2020, and was not returned by postal authorities as undeliverable, and that Claimant did not request a postponement of the hearing. C.R. 49. As such, the Referee closed the record. *Id*.

By decision dated December 29, 2020, the Referee found that Claimant's October 9, 2020 appeal of the September 2, 2020 notice of determination was untimely filed and that Claimant did not participate in the hearing to address her delay in filing the appeal. C.R. 53-54. Pointedly, the Referee explained, telephone contact could not be made because Claimant's number did not accept blocked calls. *Id*. at 54. The Referee also pointed out that the hearing notice "prominently advised" parties "that they should ensure that they are able to accept a blocked call" to participate in the hearing. *Id*. Consequently, the Referee dismissed Claimant's appeal as untimely under Section 501(e) of the UC Law and declined to consider the merits of her appeal. *Id*.

On January 9, 2021, Claimant appealed the Referee's decision to the Board. C.R. 59-67. Therein, she explained that her appeal to the Referee was late because she never received the UC Service Center's determination. *Id.* at 62. Further, on the day of the hearing before the Referee, Claimant explained she was waiting by her telephone "unaware that the phone was blocked[,]" and that she called the Referee's office at 4:07 p.m., but was told the hearing had been held without her. *Id.* at 63.

By decision mailed on March 22, 2021, the Board determined that the Referee's decision was proper under the UC Law, and it adopted and incorporated the Referee's findings of fact and conclusions of law as its own. C.R. 69. In so

5

doing, the Board first identified the issue before it as being whether Claimant had good cause for her unavailability at the scheduled telephone hearing. The Board then explained that the issue was governed by the directions in the hearing notice, which instructed that parties are responsible for ensuring that their phone does not block incoming calls for which no originating phone number is displayed. *Id.* The Board determined that Claimant's appeal failed to offer what efforts, if any, she made to ensure that her phone did not block the Referee's call. *Id.* at 70. As such, the Board concluded that the Referee correctly dismissed Claimant's appeal as untimely under Section 501(e) of the Law and affirmed the Referee's decision. *Id.* The Board further advised Claimant that she should consider reapplying for backdating of her claim based on the emergency COVID regulation for backdating that was adopted and published on November 7, 2020, subsequent to the UC Service Center's original determination on her backdating request.[7] *Id.* Claimant then petitioned this Court for review of the Board's order.

---

[7] At the time Claimant requested to backdate her claim for benefits, Section 65.43a(e) of the Department's Regulations provided for a 6-week backdating extension if "[t]he Department suspends accepting filings or is unable to handle all filings, due to an excessive volume of telephone calls or other reasons"; a 2-week extension if "[t]he claimant attempts to file by telephone, Internet or fax transmission . . . , the method used to attempt to file is unavailable or malfunctions, and the attempt to file occurs on the last day that the claimant could timely file by the method used"; a 52-week extension if "[a] UC Office fails to accept a filing as a result of error or mistake by the Department"; a 2-week extension for "[s]ickness or death of a member of the claimant's immediate family or an act of God"; and a 2-week extension "if the claimant makes all reasonable and good faith efforts to file timely but is unable to do so through no fault of the claimant." 34 Pa. Code § 65.43a(e).

Section 65.43a(e) of the Department's Regulations was amended on November 7, 2020, to allow a 52-week extension

> [d]uring the period following the issuance of the March 6, 2020
> Proclamation of Emergency Disaster, issued under [Section 7301 of
> the Emergency Management Services Code,] 35 Pa.C.S. § 7301
> (relating to general authority of Governor)[,] due to the novel

6

On appeal,[8] Claimant does not identify any allegations of error in her statement of questions involved. Instead, she presents the following facts: (1) she requested to backdate her claim and was informed she would have to appeal; (2) she attempted to appeal and it was found to be untimely; (3) she inquired about the November 7, 2020 amendment to 34 Pa. Code § 65.43a(e), which provided for an additional 52-week backdating extension due to COVID, and was informed that she had applied prior to that extension becoming effective; and (4) she called the Referee's office on the date of the hearing and was informed that the Referee held the hearing without her. Claimant's Brief (Br.) at 6. Later in her brief, Claimant explains her situation as follows:

> [Claimant] appealed for back[]dating twice. The first claim was filed on July 5, 2020, and [Claimant] was denied under [S]ection 401[(c)] because [Claimant] was unaware that unemployment was available during the pandemic if you were unable to work. The second time, [Claimant] had not received a reply from [the Board]. A call was placed on September 24, 2020[,] to inquire about the determination and was told it was mailed out on September 11, 2020[,] and was denied. Was advised the last date to apply for a timely appeal was September 17, 2020. Was advised to re-appeal and did so on October 9, 2020.

coronavirus (COVID-19) global pandemic, until the end of the current "high unemployment" period, as that term is defined in [S]ection 405-A(a.1)(2) [of the UC Law, Act of February 9, 1971, *as amended*,] 43 P.S[.] § 815(a.1)(2)[].

34 Pa. Code § 65.43a(e) (amended Nov. 7, 2020).

[8] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

*Id.* at 7. Claimant further explains that the hearing was scheduled for December 22, 2020, at 4:00 p.m., but she was unaware her phone had blocked the Referee's call. Claimant called the Referee's office at 4:07 p.m. and inquired why the Referee had not called her, and she was informed that the hearing was held without her. *Id.* Claimant thus argues that due to the above, "the pandemic[,] and the constantly changing rules/regulations regarding filing for unemployment," she "should be permitted back[]dated benefits." *Id.* at 7-9.

The Board responds by pointing out that the 15-day time limit for filing an appeal of a Department determination is mandatory, that Claimant's appeal was clearly untimely filed, which she does not dispute, and that it was Claimant's burden to establish good cause for her failure to abide by that time limit at the hearing. Board's Br. at 5-7. However, the Board notes, Claimant failed to participate in the hearing due to the Referee not being able to reach her by phone, and therefore, she failed to meet her burden of proof as to why her late appeal should be accepted *nunc pro tunc*. *Id.* The Board also points out that, in her brief, Claimant failed to assert and/or develop any argument regarding good cause for filing a late appeal, her failure to participate at the hearing, or how the Board otherwise erred in this case; rather, she only addresses the merits of her claim, which are not before the Court. *Id.* at 7-9. Thus, according to the Board, those arguments are waived. *Id.* at 5, 8-9.

Although Claimant's brief is not a model of clarity, in that it does not specifically set forth the questions involved on appeal or provide any substantive argument thereon, we nevertheless construe the averments in Claimant's brief as an attempt to assert that her appeal was late due to an administrative breakdown and/or non-negligent conduct beyond her control. We note that Claimant raised the administrative breakdown issue regarding her non-receipt of the UC Service

8

Center's determination and her untimely appeal therefrom, albeit not in those exact words, in her appeal to the Referee, her appeal to the Board, and her petition for review to this Court. *See* C.R. 28, 62-63; *see also* Claimant's Ancillary Pet. for Rev. filed 4/22/2021. Claimant also raised issues regarding her non-participation in the Referee's hearing, which was held without her on bases that will be discussed *infra*, in her appeal to the Board and her petition for review and brief to this Court. We therefore decline to find waiver under these circumstances and will consider the averments set forth in Claimant's brief.

At the time of the UC Service Center's determination in this case, Section 501(e) of the Law required that a claimant appeal a Department determination within 15 days after the notice was mailed to the claimant's last known post office address. 43 P.S. § 821(e). We have previously held that the 15-day period "is mandatory and subject to strict application." *Vereb v. Unemployment Comp. Bd. of Rev.*, 676 A.2d 1290, 1293 (Pa. Cmwlth. 1996). If an appeal from a Department determination is not filed within the 15-day period, the determination becomes final, and the Board does not have the requisite jurisdiction to consider the merits of the matter. *Id.*

An untimely appeal may be permitted in limited circumstances. *Hessou v. Unemployment Comp. Bd. of Rev.*, 942 A.2d 194, 198 (Pa. Cmwlth. 2008). However, a UC claimant bears a heavy burden to justify an untimely appeal. *Id.* To satisfy her burden of proof, the claimant must establish either that the Department "engaged in fraudulent behavior or manifestly wrongful or negligent conduct" or that "non-negligent conduct beyond [the claimant's] control caused the delay" in filing the appeal. *Id.* Thus, the "[f]ailure to file an appeal within [15] days, without an adequate excuse for the late filing, mandates dismissal of the appeal." *Id.*

9

In this case, the Board found that Claimant's appeal to the Referee was untimely because she did not present good cause for the delay in filing. Indeed, she did not present any evidence because she did not participate in the telephone hearing. The Board further found that Claimant was responsible for making sure her phone would accept the Referee's call; however, according to the Board, Claimant did not suggest in her appeal that she made any attempt at ensuring her phone would not block the call. Recently, in *O'Leary v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 984 C.D. 2020, filed October 27, 2021), we questioned the Board's authority to hold parties responsible for technological difficulties involving their phones and incoming calls.[9]

In *O'Leary*, the employer terminated the claimant's employment for absenteeism and tardiness. The claimant was subsequently awarded UC benefits, and the employer appealed. Due to COVID, the in-person hearing before the referee was rescheduled to take place telephonically. During the hearing, the referee called the claimant's counsel's phone number twice, but received a message both times that the calls were forwarded to voicemail and the number was not available.[10] The referee then called the claimant's cell phone number twice but received the same message that the number was not available.[11] Despite not being able to reach the

---

[9] "[A]n unreported panel decision of this Court issued after January 15, 2008," may be cited "for its persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *O'Leary* is cited herein for its persuasive value.

[10] The referee left a message for the attorney on the second call.

[11] While we acknowledge the difference between receiving a message (as herein) that a party's phone will not accept calls from numbers with caller ID blocked and a message (as in *O'Leary*) that the number is not available, thus permitting the caller to leave a voicemail message, the reasoning in *O'Leary* is applicable to this case because therein, the Board claimed that the claimant's phone was set up to block unknown numbers.

10

claimant or his counsel, the referee proceeded with the hearing with the employer and its counsel, and without the claimant or his counsel. During the hearing, the referee received a message that the claimant's counsel had called the referee's office and provided an alternate phone number at which he could be reached. Eventually, the referee was able to contact the claimant's counsel, who advised that the claimant contacted counsel via text message stating that he received one voicemail from the referee, but that he had not yet received a call for the hearing. The claimant's counsel informed the referee that he provided the wrong phone number to the referee's office, but that the claimant's phone number was in fact correct. The referee then called the claimant's number a third time and got the same message. Inexplicably, counsel's call with the referee disconnected, and the referee again proceeded with the hearing without the claimant or his counsel on the call. Ultimately, the referee found in favor of the employer, and the claimant appealed to the Board. *Id.*, slip op. at 1-5.

Before the Board, the claimant asserted that he never received a phone call that he was able to answer. The Board remanded the matter and directed the referee to conduct a hearing to allow the claimant to explain his failure to participate in the hearing and the parties to present additional evidence and/or testimony on the merits. During the remand hearing,[12] the claimant explained that his cell phone never rang, but he did receive voicemails from an unknown number, which appeared to be from the referee. The claimant confirmed that he received the hearing notice for the first hearing, and further explained that he informed his counsel of the problems he experienced. The claimant's counsel then objected to and moved to strike testimony and exhibits offered at the first hearing because the technology issues experienced

---

[12] Similar technological issues also occurred during the remand hearing. *O'Leary*, slip op. at 5 n.5.

11

at the first hearing were due to non-negligent circumstances. Counsel asserted that to permit such evidence violated the claimant's due process rights. The referee overruled the objection and proceeded to receive evidence and testimony on the merits.

Ultimately, the Board affirmed the initial decision of the referee. In doing so, the Board first observed that the claimant failed to participate in the hearing because his phone did not ring, and thus, it determined that the claimant did not establish good cause for his non-participation in the hearing. The Board reasoned that the claimant was responsible for his own technology and was in charge of his phone and any incoming calls. The claimant then petitioned this Court for review of the Board's order. *O'Leary*, slip op. at 5-6.

On appeal, the claimant argued that the Board erred by refusing to consider his evidence. We agreed, noting that the claimant was doing exactly what he was directed to do, i.e., waiting by his cell phone for the referee's call. *O'Leary*, slip op. at 7. We further observed that there was no evidence in the record reflecting the reason for the failure of the claimant's cell phone to ring. Rather, the claimant's undisputed testimony showed "he did what he could to remedy the situation 'in real time,' as the hearing was being conducted in his absence." *Id.* Also, we noted there was no indication why the referee's call to the claimant's counsel was dropped; yet, after the call ended, the referee made no further attempt to contact counsel. *Id.* Pointedly, we observed, neither the claimant nor his counsel could participate in the hearing at that point "because the telephone hearings were arranged in such a way that parties and their counsel could not call into the hearing but could only be connected when the [r]eferee called them." *Id.*, slip op. at 7-8.

In ruling for the claimant, we explained as follows:

12

the [Board] does not cite—and our own review of [the Board's] regulations fails to find—any authority for the proposition that "[p]arties are responsible for their own technology and in charge of their phone and incoming calls," let alone any regulation suggesting that technological difficulties of unknown cause can preclude a party from having his day in court. Even though an administrative tribunal has discretion over how to conduct a hearing, there are still "certain fundamental rights that must be honored, including the right to a fair hearing in accordance with due process of law." *Collins v. Unemployment Comp. Bd. of Rev.*, 415 A.2d 145, 146 (Pa. Cmwlth. 1980).

*O'Leary*, slip op. at 8. Further, in rejecting the Board's assertion that the claimant disregarded the notice sent to him and used a cell phone set up to block unknown calls, we stated that such was belied by the fact that the claimant received at least two voicemail messages from the referee. Moreover, the

[c]laimant's undisputed testimony reflect[ed] that he did not expect the phone to block calls and was waiting for it to ring so that he could be connected. While it [wa]s unclear here whether the problem was with [the c]laimant's cell phone or otherwise, **the Board's policy which expects the average [UC] claimant to have a sophisticated understanding and proficiency in program[m]ing technological devices is patently unreasonable**.

*Id.*, slip op. at 8 n.9 (emphasis added). Based on the foregoing, we held that the referee unreasonably deprived the claimant "of his right to present his case because he was unable to receive her calls[,]" and that the Board abused its discretion by refusing to consider the claimant's evidence presented at the remand hearing. Accordingly, we vacated the Board's order and remanded the matter to the Board

13

"for consideration of the merits . . . on the evidence already adduced." *Id.*, slip op. at 9.

As in *O'Leary*, in its brief to this Court, the Board again fails to present any authority for finding Claimant was required to ensure her phone did not block the Referee's call. In the present case, prior to the close of the hearing, the Referee was informed that Claimant had contacted his office inquiring why she had yet to receive a phone call for the hearing. Instead of having office staff inform Claimant that the Referee could not reach her on the phone number she provided and asking whether Claimant could provide a different number, the Referee went back on the record, stating that Claimant had contacted the office but neither provided an alternate number at which she could be reached, nor requested a postponement of the hearing, after which the Referee closed the record. We are at a loss as to why the Referee faulted Claimant for not providing an alternate number in the absence of any regulation or other rule requiring as much, as the record does not reflect that anyone, including Ms. Mols, informed her that there was a problem with the number she provided. Interestingly, the record does reflect that the Referee did have an alternate number for Claimant at his disposal, as Claimant's appeal to the Referee listed two phone numbers, one ending in -8763, and another ending in -8576. *See* C.R. 26, 28. Moreover, the suggestion that Claimant could have requested a postponement of the hearing is absurd, when it does not appear she was ever informed there was a problem at the hearing prior to the close of the record.

Similar to the claimant in *O'Leary*, Claimant here "was doing exactly" what she was directed to do: "waiting by [her] phone at the appointed time for the call from the Referee's office." *O'Leary*, slip op. at 7. The claimant in *O'Leary* notified the referee of the problem through counsel, which we stated was all that

14

could be done "to remedy the situation 'in real time' . . . ." *Id.* Claimant herein contacted the Referee's office directly and, thus, made a similar attempt to rectify the problem "in real time." As we rejected the Board's claim in *O'Leary* that parties are responsible for their own technology and in charge of their phone and incoming calls, we reject that suggestion in this case and conclude that the Board abused its discretion by dismissing Claimant's appeal because she failed to explain what efforts she took to ensure that her phone did not block the Referee's call.

Generally, where a claimant has yet to testify regarding her failure to participate at a hearing, we would remand to the Board for it to make factual findings. However, in this case, the record before the Referee conclusively establishes that Claimant contacted the Referee prior to the conclusion of the hearing, asking why she had yet to receive a call. C.R. at 51. It also establishes that the Referee did not attempt to contact Claimant, either through his office staff or the alternate phone number in his records. Instead, he faulted Claimant for having a phone that did not accept calls from blocked numbers and closed the record. As such, the evidence of record conclusively establishes that Claimant contacted the Referee's office "in real time," was apparently never informed that there was an issue with her phone, and, like the claimant in *O'Leary*, was improperly charged with being responsible for her own technology and in charge of her phone and any incoming calls.

Accordingly, for the above reasons, we vacate the Board's order and remand this matter to the Board for it to hold a hearing and make findings of fact relative to (1) the timeliness of Claimant's appeal to the Referee, (2) Claimant's allegation that she did not receive the UC Service Center's determination, and (3)

15

whether Claimant's allegation, if true, warrants *nunc pro tunc* relief, such that the Board must accept the untimely appeal and consider it on its merits.

_____
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Denice L. Walthour,                         :
              Petitioner        :
                                            :
      v.                                   :
                                            :
Unemployment Compensation                    :
Board of Review,                             :     No. 429 C.D. 2021
              Respondent        :

## O R D E R

AND NOW, this 12th day of May, 2022, the March 22, 2021 order of the Unemployment Compensation Board of Review is hereby VACATED, and the matter is REMANDED to the Board for further proceedings in accordance with the attached opinion.

      Jurisdiction relinquished.

 

                                        _____
                                        CHRISTINE FIZZANO CANNON, Judge