IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Mirsada Begovic, | : | |
| Petitioner | : | |
| | : | No. 638 C.D. 2018 |
| v. | : | |
| | : | Submitted: September 28, 2018 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  February 19, 2019

Mirsada Begovic (Claimant) petitions for review from the April 9, 2018 order of the Unemployment Compensation Board of Review (Board) affirming the order of a referee, which dismissed her appeal as untimely pursuant to section 501(e) of the Unemployment Compensation Law (Law).[1]

**Facts and Procedural History**

Claimant applied for unemployment compensation (UC) benefits and, on February 27, 2017, a local service center issued a notice of financial determination

---

[1] Section 501(e) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §821(e).

finding Claimant ineligible for benefits for failure to earn sufficient wages from her employment at Community Outreach Group and the University of Pittsburgh. Claimant appealed arguing that her wages from her employment with Optimal Phone Interpreters (OPI) had not been considered. (Certified Record (C.R.) at Item Nos. 3-4.)

The local service center vacated the notice of financial determination and performed a wage investigation. On April 11, 2017, the local service center issued a new notice of financial determination (Revised Financial Determination) that included wages she earned from her employment with the company Conservation Consultants, but still did not list her wages earned with OPI. The new Revised Financial Determination, which was mailed to her last known address, again found Claimant ineligible for benefits for failure to earn sufficient wages and listed April 26, 2017, as the last day to file an appeal. (Referee's Finding of Fact (F.F.) Nos. 1-3; Certified Record (C.R.) at Item Nos. 3-5.)

Claimant filed an untimely appeal on May 17, 2017, requesting a hearing and asserting that she did not receive an "appeal form" and, thus, did not receive instruction on "when and how" to appeal. (C.R. at Item No. 6.) Additionally, Claimant argued, "I am not [an] independent contractor but an employee," and included as an attachment the first page of a May 2, 2017 letter, entitled Explanation Revised Notice of Financial Eligibility: Wage Discrepancy (Letter of Explanation), from the Department of Labor and Industry (the Department), notifying Claimant that it had concluded its wage investigation and determined that she remained ineligible for UC benefits because her OPI wages were earned as an independent contractor and thus did not qualify under Section 4(*l*)(2)(B) of the Law.[2] Pertinent here, **the Letter**

---

[2] Section 4(*l*)(2)(B) provides, in relevant part, as follows:
**(Footnote continued on next page…)**

**of Explanation stated that "a revised Notice of Financial Determination has been issued to you in a separate mailing."** (C.R. at Item No. 6).

A referee conducted a hearing over the course of two days, July 11 and 26, 2017, at which Claimant and representatives of OPI and Conservation Consultants appeared. Claimant confirmed that the address listed on the Revised Financial Determination was her correct address and, initially, acknowledged that she had received it. Claimant, in fact, brought her copy of the Revised Financial Determination to the hearing and acknowledged that the appeal deadline was listed on it when the referee asked:

> [Referee:] So they did a wage investigation. And then they issued the new [Revised] Financial Determination on April 11th which would then be the one at issue here today. And did you receive that?
>
> [Claimant:] Yes.
>
> [Referee:] Okay.
>
> [Claimant:] And [OPI] was still missing.

---

**(continued…)**

> Services performed by an individual for wages shall be deemed to be employment subject to this [Law], unless and until it is shown to the satisfaction of the department that--(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. §753(*l*)(2)(B).

[Referee:] Okay. All Right. So this was not part of the record here, but I will indicate -- do you agree you received the April 11, 2017 [Revised] Financial Determination? As it's -- *you do have it in your hand.*

[Claimant:] Yes.

[Referee:] We don't have it in the file, but you received that?

[Claimant:] Yes.

[Referee:] Okay. And so did you take note of the appeal deadline listed on there? It will tell you.

[Claimant:] There's not a deadline there. April -- oh, okay. Yeah. That's there. Appeal --

(C.R. at Item No. 15, p. 15) (emphasis added). After acknowledging the deadline to appeal appeared on the copy of the April 11, 2017 Revised Financial Determination, Claimant stated, "It could be that I did not receive [it] by April 26." *Id.* When asked about the date she received the Revised Financial Determination, Claimant stated that she did not receive it until "about five days before May 17, [2017]." (C.R. at Item No. 15, p. 17.)

Claimant then asserted that the Revised Financial Determination she received did not include a UC 47 Form with instructions on how to appeal and that she spent "the whole week trying to find what is [sic] deadline because I didn't see [the] deadline." *Id.* Claimant, however, acknowledged that she never previously had difficulties with receiving her mail in a timely manner at her address. (Referee's F.F. Nos. 4-5; C.R. at Item Nos. 3, 15.)

On July 28, 2017, the referee issued a decision and order dismissing Claimant's appeal and finding her ineligible for benefits under section 501(e) of the Law due to her untimely appeal. The referee noted that the record established that the

4

local service center mailed the Revised Financial Determination to Claimant's last known mailing address and, because there was no indication that it was returned as undeliverable, it was presumed to have been received by Claimant. Noting Claimant's testimony that she was unsure of how, or with whom, to file an appeal, the referee stated that ignorance of the law or failure to understand the appeal procedure does not excuse a party from his statutory obligation to file a timely appeal under Pennsylvania law. The referee additionally noted that Claimant was able to file a timely appeal from the original financial determination. Ultimately, the referee held that Claimant failed to present evidence of extraordinary circumstances such as fraud or a breakdown in the administrative process and, thus, was not entitled to an appeal *nunc pro tunc*. (C.R. at Item No. 21.)

Claimant filed a timely appeal from the referee's decision setting forth a timeline with her account of events that transpired. In it, Claimant acknowledged that the April 11, 2017 Revised Financial Determination listed an appeal deadline of April 26, 2017, and stated, "**I was planning to appeal this Determination before the deadline.**" (C.R. at Item No. 22) (emphasis in original). However, Claimant also disclosed for the first time that, on April 19, 2017, she received a phone call from a man that was investigating facts regarding her employment with OPI. The caller sought further details regarding the questions that she answered previously in an employment questionnaire, and requested that she fax two 1099-MICS documents to the "Office of UC Benefits." *Id.* Claimant further stated, "**He told me that I will receive a new revised Notice of Financial Determination very soon. He instructed me, further, to wait for a new Determination and, in a [sic] case I do not agree with his decision, I may file an appeal.**" *Id.* (emphasis in original). Claimant acknowledged that she did not mention this at the hearing, stating that she

5

assumed the referee was aware of it. Claimant further averred that she recently learned that the "phone investigation of April 19, 2017, was conducted by the **Field Accounting Service**, and the [local service center] ha[d] no track record of it," and that the local service center did not have a record of "any new[ly] revised Notice of Financial Determination issued following [the] phone call." *Id.* Claimant noted, however, a duplicate April 11, 2017 Revised Financial Determination listing the April 26, 2017 deadline was issued to her on May 18, 2017.

On September 20, 2017, the Board issued a remand order, directing the referee to schedule a hearing "to receive testimony from a representative of the Service Center to address [] [C]laimant's argument that the Service Center may not have mailed the [R]evised [F]inancial [D]etermination to her that is dated April 11, 2017. Both parties shall also have an opportunity to cross-examine the representative." (C.R. at Item No. 27.) A hearing was held on October 17, 2017, at which Claimant, counsel for Conservation Consultants, and Melanie Hall, an Employment Security Specialist representing the Department, appeared.

At the hearing, Ms. Hall testified that Claimant's claim record had an entry for April 10, 2017, stating that the Revised Financial Determination was mailed to Claimant on April 11, 2017. Ms. Hall stated that these mailings are an "automatic process," whereby two forms are generated, one of which goes to the claimant and the other to the employer. Ms. Hall also stated that two forms, a UC 1627, which notifies the recipient that the enclosed document might affect his UC benefits and contains translations into several languages, and a UC 47, which gives instructions on how to appeal and is included with any appealable documentation, are attached to the financial determination. Ms. Hall noted that on May 18, 2017, the day after Claimant's appeal was received, there were two entries on the claim form indicating

6

that duplicates of the original financial determination and the Revised Financial Determination were mailed to Claimant. (C.R. at Item No. 32, pp. 13-14.)

Prior to questioning Ms. Hall, Claimant asserted that the Board did not understand her appeal, which was not about whether she received the April 11th Revised Financial Determination, which Claimant acknowledged was sent. Instead, Claimant argued that she appealed because she felt there was a "breakdown in administrative process on the part of the [local service center]" since the investigation into her wages earned from OPI was still being conducted when the Revised Financial Determination was sent. (C.R. at Item No. 32, p. 7.) Specifically, Claimant's appeal centered on the fact that the Revised Financial Determination was issued prematurely because it was sent while the wage investigation into her employment with OPI was still ongoing. *Id.* at p. 15.

In response, Ms. Hall explained that wage investigations are handled by the monetary unit at the local service center, but observed that the Department

> issue[s] a [f]inancial [d]etermination based on the wages that we have at the time, just so that the Claimant is aware that these are the wages we have on file, and we do notify the [c]laimants when they file for wage investigation that they will be notified once the investigation is completed.

(C.R. at Item No. 32, p. 15-16.) She noted that the financial determination the Department issues, in this case the April 11 Revised Financial Determination, is based upon the information it presently has in order to give the claimant an opportunity to appeal and that if, upon completion of the wage investigation, it is determined that the wages in question are ineligible for consideration, "**there will not be another [f]inancial [d]etermination issued because nothing has changed as far as the wage record goes.**" (C.R. at Item No. 32, p. 22) (emphasis added). Ms. Hall

7

indicated that an additional revised financial determination is issued only if wages are added or removed from the prior financial determination. Thus, Ms. Hall explained that Claimant was required to file a timely appeal from the April 11 Revised Financial Determination in order for the referee to address the appeal  (C.R. at Item No. 32, pp. 15-17, 22.)

Under questioning by Conservation Consultants, Ms. Hall explained that she did not physically mail the Revised Financial Determination because it was automatically generated; however, she noted that there was an entry on the claim record indicating that it was mailed and stated that the post office did not return the Revised Financial Determination as undeliverable. (C.R. at Item No. 32, p. 21.)

Claimant presented her own testimony during which she explained that the Department representative who called her on April 19, 2017, stated that she would receive the "Revised Notice of Financial Determination including the status of the [OPI wages]" and that if she did not agree with it, she could appeal. (C.R. at Item No. 32, p. 19.) Claimant stated that, instead of appealing on April 26, pursuant to the Department representative's advice, she chose to wait until she received the second revised financial determination accounting for her OPI wages. When asked specifically whether the Department representative told her not to appeal the April 11 Revised Financial Determination, Claimant stated, "Well he said that [the] investigation is still going on." *Id.* at p. 20. Claimant further stated that the representative told her that he would send the revised financial determination "any moment," which was why she chose to wait until May 2, 2017, at which point she called him to inquire about the wage investigation's status. *Id.* Claimant said she then called an 800 number, per the representative's advice, and was told that the monetary unit was not sending a new revised notice of financial determination but,

8

instead, was sending a duplicate of the April 11 Revised Financial Determination. Claimant concluded by asserting that she was not given the chance to appeal the issue of the eligibility of her OPI wages because she never received the second revised financial determination listing those wages as the Department simply resent the April 11 Revised Financial Determination that she had received previously. *Id.*

On April 9, 2018, the Board issued an order affirming the decision of the referee to deny Claimant benefits. In its reasoning, the Board stated,

> At the hearing, [] [C]laimant alleged that an administrative breakdown was the result of her late appeal, namely that the April 11, 2017, [Revised] [F]inancial [D]etermination was issued prematurely given that a wage investigation was still ongoing. The Department representative, however, explained that the financial determination was issued before the wage investigation was finished because it gave [] [C]laimant the ability to appeal because if it was determined later that her [OPI] wages were not usable, another financial determination would not be issued. The Board does not credit [] [C]laimant's testimony that she was informed in any way not to appeal the April 11, 2017 [Revised Financial] [D]etermination when she was in contact with the Department on April 19, 2017. Therefore, because in this case there is no credible evidence that statements made by compensation authorities were misleading as to the availability, timing, or need for an appeal, the Board dismisses the appeal and will not address the wage issue. Therefore, the Board adopts and incorporates the Referee's findings and conclusions.

(C.R. at Item No. 35.) Claimant filed the present petition for review[3] with this Court arguing that the Board erred in failing to permit her to appeal *nunc pro tunc* where she proved that there was a breakdown in the administrative process.

---

[3] Our review of the Board's decision "is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or **(Footnote continued on next page…)**

9

## Discussion

Claimant asserts that she demonstrated a breakdown in the administrative process occurred where the referee "did not know or ignored the fact that [the Revised Financial] Determination of April 11, 2017, that ruled that [Claimant] is not financially eligible for benefits, was issued prematurely while the wage investigation was still ongoing." (Claimant's Brief at 13.) Claimant further cites her testimony that she was told by the Department's representative to wait for a second revised determination that would replace the April 11, 2017 Revised Financial Determination.

In pertinent part, sections 501(d) and (e) of the Law states,

(d) The department shall notify any employer or claimant who has been notified as required . . . of any revision made in the determination as contained in the original notice given to such employer or claimant.

(e) Unless the claimant or last employer or base-year employer of the claimant files an appeal with the board from the determination contained in any notice required to be furnished . . . within fifteen calendar days after such notice was delivered to him personally, or was mailed to his last known post office address, and applies for a hearing, such determination of the department, with respect to the particular facts set forth in such notice, shall be final and compensation shall be paid or denied in accordance therewith.

43 P.S. §821(d), (e).

---

**(continued…)**

whether constitutional rights were violated." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

If an appeal is not filed within 15 days of mailing, the referee and the Board lack jurisdiction to consider the matter, and the initial eligibility determination becomes final. *Roman-Hutchinson v. Unemployment Compensation Board of Review*, 972 A.2d 1286, 1288 n.1 (Pa. Cmwlth. 2009); *United States Postal Service v. Unemployment Compensation Board of Review*, 620 A.2d 572, 573 (Pa. Cmwlth. 1993). An appeal filed even 1 day after the 15-day appeal period is untimely and must be dismissed. *Hessou v. Unemployment Compensation Board of Review*, 942 A.2d 194, 197-98 (Pa. Cmwlth. 2008).

There is an exception, though, and an appeal *nunc pro tunc* may be allowed "where a delay in filing the appeal is caused by extraordinary circumstances involving fraud or some breakdown in the administrative process, or non-negligent circumstances related to an appellant or [her] counsel or a third party." *Russo v. Unemployment Compensation Board of Review*, 13 A.3d 1000, 1003 (Pa. Cmwlth. 2010). In cases where a claimant is "unintentionally misled by an official who is authorized to act in the premises, the time [for appeal] may also be extended when it is possible to relieve an innocent party of injury consequent on such misleading act." *Flynn v. Unemployment Compensation Board of Review*, 159 A.2d 579 (Pa. Super. 1960). *See also Stana v. Unemployment Compensation Board of Review*, 791 A.2d 1269, 1271 (Pa. Cmwlth. 2002). Further, "[W]here an administrative body acts negligently, improperly or in a misleading way, an appeal *nunc pro tunc* may be warranted." *Union Electric Corporation v. Board of Property Assessment, Appeals & Review of Allegheny County*, 746 A.2d 581, 584 (Pa. 2000).

In this case, Claimant concedes that she received the Revised Financial Determination prior to the April 26, 2017 appeal deadline and did not file a timely appeal. Thus, Claimant's May 17, 2017 appeal was untimely and the Board correctly

11

dismissed her appeal unless Claimant can show that the Board abused its discretion in dismissing her appeal because she was entitled to *nunc pro tunc* relief due to extraordinary circumstances.

With regard to that issue, Claimant contends that an administrative breakdown occurred because the April 19 phone call led her to believe that a new financial determination accounting for her OPI wages would be issued. Claimant states that this phone call, which occurred during the 15-day appeal period, confused her because the Department's representative's purpose for calling her was to inquire further about her wages with OPI—the very ones she sought to have included in the Revised Financial Determination.

Claimant argues this confusion was compounded by the May 2 Letter of Explanation, which erroneously indicated that a newly revised financial determination had been mailed to her. As noted above, only the first page of this letter, which Claimant attached to her appeal, appears in the record. In pertinent part, the Letter of Explanation states,

> **A thorough investigation has been completed and a revised Notice of Financial Determination has been issued to you in a separate mailing**. The results of the investigation are that your financial eligibility has not changed. The following explains why your financial eligibility has remained the same.
>
> . . .
>
> You were free from direction and control over the performance of your services and were engaged in an independently established trade, occupation, profession, or business. Such services do not meet the UC definition of "employment." [Section 4(l)(2)(B)].

(C.R. at Item No. 6) (emphasis added). Claimant states that she was confused because she never received this second revised financial determination, and the

explanation she was given by the Department was that she had already received it per the April 11 Revised Financial Determination. Claimant asserts that this confusion caused by the Department was sufficient to constitute an administrative breakdown.

In *Martyna v. Unemployment Compensation Board of Review*, 692 A.2d 594 (Pa. Cmwlth. 1997), a claimant, Carole Martyna, failed to appeal her original notice of financial determination, which concluded she was ineligible for benefits. Despite this, however, the Department issued two revised financial determinations in the following two months, each concluding that she was ineligible for benefits. Martyna filed an appeal from the final notice of financial determination. Before this Court, the Board argued that its original financial determination became final when Martyna failed to appeal. We disagreed, stating

> At the very least, we can say that the issuance of two subsequent determinations of ineligibility was sufficiently misleading so as to constitute administrative breakdown. While it was certainly the Board's prerogative to decide that Martyna was not told not to file an appeal after receiving the first notice, since that finding is based on credibility, the very fact that the Bureau sent two revised notices well after the original fifteen-day appeal period had expired leads to the conclusion that it believed it had the power to do so. If it was mistaken, Martyna should not bear the consequences of that administrative confusion.

*Id.* at 597-98.

Similarly, in *Waters-Bey v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 777 C.D. 2016, filed June 12, 2017),[4] the claimant, June Waters-Bey, filed an untimely appeal to her original notice of financial determination, finding her ineligible for benefits. Nonetheless, the Department issued

---

[4] Pursuant to this Court's Internal Operating Procedures, an unreported opinion of the Court filed after January 15, 2008, may be cited for its persuasive value. 210 Pa. Code §69.414(a).

a notice of revised standing, vacating her untimely appeal from the original notice of financial determination while the local service center investigated her financial eligibility. Days later, the Board dismissed Waters-Bey's untimely appeal. Thereafter, the Department issued a revised financial determination again finding her ineligible for benefits, to which Waters-Bey filed a timely appeal. At a referee hearing, Waters-Bey testified that she was confused by the revised financial determination that she received after her appeal from the original was dismissed and, upon calling the local service center, was told to appeal the revised financial determination. Ultimately, the Board dismissed her appeal from the revised financial determination, concluding that its order dismissing her untimely appeal from the original financial determination superseded any determinations by the Department and, thus, the Department lacked jurisdiction to issue the revised financial determination. Waters-Bey appealed and we held that "the timing of the Department's subsequent determinations immediately surrounding the Board's deliberations on [Waters-Bey]'s appeal [was] sufficiently misleading so as to constitute a breakdown of the administrative process." *Id.*, slip op. at 8. We further emphasized that neither the referee's, nor the Board's, decisions were on the merits of the appeal and instead only addressed the timeliness.

In line with *Martyna* and *Waters-Bey*, we can say that the Department's May 2, 2017 letter, which erroneously indicated that another letter was forthcoming, coupled with the phone call from the Department representative, which occurred during Claimant's appeal period and in the course of the wage investigation she sought, but after the Department sent her the Revised Financial Determination, were sufficiently misleading so as to constitute a breakdown in the administrative process. The Department was apparently confused about its own procedures as reflected by

14

the timing[5] and the indication that it would issue a new revised financial determination via the May 2 letter which, according to Ms. Hall's testimony was false.[6] As we said in *Martyna*, "If [the Department] was mistaken, [Claimant] should not bear the consequences of that administrative confusion." *Martyna*, 692 A.2d at 598. Thus, we remand for a decision on the merits of Claimant's appeal from the Revised Financial Determination regarding her wages earned from OPI.

Accordingly, we reverse the Board's April 9, 2018 order and remand for a decision on the merits of the issues Claimant raised on appeal.

_____
PATRICIA A. McCULLOUGH, Judge

---

[5] *See Waters-Bey*, slip op. at 8 ("[T]he timing of the Department's subsequent determinations immediately surrounding the Board's deliberations on Claimant's appeal is sufficiently misleading so as to constitute a breakdown of the administrative process.").

[6] As noted above, Ms. Hall testified that an additional revised financial determination is issued **only** if wages are added or removed from the prior financial determination. (C.R. at Item No. 32, pp. 15-17, 22.)

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mirsada Begovic,                               :
                    Petitioner                 :
                                               :     No.  638 C.D. 2018
          v.                                   :
                                               :
Unemployment Compensation                      :
Board of Review,                               :
                    Respondent                 :

# ***ORDER***

AND NOW, this 19th day of February, 2019, the April 9, 2018 order of the Unemployment Compensation Board of Review is reversed and this matter is remanded for proceedings consistent with this opinion.

Jurisdiction is relinquished.

_____
PATRICIA A. McCULLOUGH, Judge